## Sullivan v. Sullivan.

(Decided March 8, 1918.)

## Appeal from Hickman Circuit Court.

1. Deeds—Acceptance—Delivery.—A deed must be accepted by the grantee, before the title passes, and while an acceptance is a part of the delivery of a deed, the acts, which constitute the offer to deliver and the acceptance, do not necessarily occur at the same time.

2. Deeds—Delivery—Acceptance.—If a deed is delivered to a third person for a grantee, with the assent of the grantee, it is an acceptance by him of the deed.

3. Deeds—Exercise of Ownership—Acceptance.—An exercise of ownership over the property conveyed or claim of title under a deed is an acceptance of it.

4. Adverse Possession—Possession by Joint Tenant.—The possession by a joint tenant is the possession of his co-tenants, and can not be adverse to them, unless there is an actual ouster, and a holding adversely by the one in possession, with notice of it to his co-tenants, either actual notice or a holding accompanied with such acts and in such manner as to necessarily apprise the co-tenants of the adverse character of the holding.

5. Deeds—Fraudulent Conveyances as to Creditors—Not Void as to Parties.—The statute, which declares void a deed executed in fraud of the grantor's creditors, is not void, as to the parties to the deed, and a grantor can not successfully resist the recovery of lands by a grantee, upon the sole ground, that he executed the deed in fraud of his creditors.

D. G. PARK, T. J. MURPHY, W. S. FOY and JOHN H. EVANS for appellant.

BENNETT, ROBBINS & ROBBINS and L. L. HINDMAN for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

In the year, 1883, Edward P. Martin Company made to the appellant, James A. Sullivan, and the appellee, W. P. Sullivan, brothers, as grantees, a deed of conveyance, by which there was conveyed to them, jointly, a tract of eighty acres of land. In 1908 they executed to each other a deed of partition, by which there was conveyed to each of them, in severalty, about forty acres of land. On the 21st day of April, 1915, W. P. Sullivan filed a suit, in ejectment, against James A. Sullivan to recover from him the possession of the portion of land, which William re-

ceived, in severalty, under the deed of partition, and to recover from him the rents of the land after the first day of January, 1915. James answered, traversing the ownership of William and his right to the possession, and affirmatively set up pleas in avoidance of the deed of 1883, from Edward P. Martin Company, and the deed of partition of 1908, so far as the deeds conveyed any title to William, and further, asked that if his pleas in avoidance were not sustained, that he should be adjudged a lien upon the land for the sum of $1,500.00, which he alleged, that he was entitled to recover from William for the increase in the vendible value of the land caused by valuable and lasting improvements, which he had placed thereon, and $150.00 for taxes, which he claimed, he had paid upon the land, since the year 1908. Issue was joined upon all the affirmative matters in the answer and counter-claim, and upon motion of James, the action was transferred to the equity side of the docket. The proof was taken by depositions, and upon the trial the chancellor decided all the issues adversely, to the contentions of James, dismissed his counter-claim, and adjudged, that William was the owner of the land and entitled to the possession, and awarded a writ of possession in his favor. From this judgment, James has appealed, and insists that the chancellor erred in his decision upon all the issues of fact, as well as the law pertaining to the facts. James contends, that the deed of 1883, executed to him and William, jointly, did not convey any title to William, because he, as alleged, refused to accept the deed and it was never delivered to him; that William never paid any part of the purchase money; that appellant accepted the deed, took possession of the land and held it adversely until 1908, and since that time, until the bringing of the suit; that he had, long before 1908, by his adverse possession become the sole owner of all the land; that the partition deed of 1908, by which a portion of the land was set apart and conveyed to William, in severalty, was executed and delivered without any consideration to support it; that he, James, was embarrassed with debts and to prevent his creditors from selling the land, or some portion of it, for their claims against him, that he secured William to enter into the partition deed with him, so as to conceal the portion of land, allotted to William from his creditors; that William knew of his fraudulent purpose and so accepted the deed, but with the under-

standing, that he was not to be the owner of the land, but was to fraudulently hold it for James, until the latter could satisfy his creditors.

(a). The first ground relied upon for reversal is that William refused to accept the deed made to them, jointly, in 1883, and hence never did have any title to any part of the eighty acre tract of land, and therefore the deed, of partition made between them, in 1908, was without any consideration passing from William to James for the portion of the land, which William received, in severalty, under the deed. James testified, that, he negotiated the purchase of the land from Edward P. Martin Company for the sum of $400.00, of which $133.33 was paid, in cash, at the time of the delivery of the deed by Edward P. Martin Company, and three notes were executed for the deferred payments; that the name of William was inserted as a joint grantee with him in the deed, by him, upon the suggestion of their father, and that he paid all the cash payment and executed the notes, signing William's name to the joint notes without authority from William, but upon the suggestion of their father; that he notified William of the facts before the delivery of the deed and that William expressly refused to assent to the transaction or to have anything to do with it, or to pay any part of the purchase price; that he received the deed and caused it to be recorded and took possession of the land as his own; that, thereafter, he paid the sum of $90.00 upon the purchase price, and in 1887, Edward P. Martin Company sued upon the unpaid notes, obtained a judgment against him and William for the amount of the notes, and for the enforcement of a. lien upon the land, and that he, alone, satisfied the judgment. Upon the other hand, William testified, that he and James agreed to purchase the land; that he was present, when the deed was delivered and paid one half of the cash payment; that James signed his name to the notes for the deferred payments, not in his presence, but by his consent; that, thereafter, he paid one half of the remaining unpaid purchase money, including one half of the sum paid to satisfy the judgment upon the notes for the deferred payments. Evidence was given by their mother, brother, sister and brother-in-law to the effect, that from the time of the purchase of the land, in 1883, until the deed of partition was made in 1908, that James never claimed to own, only, an undivided one half interest in

the land, and admitted that William owned the other undivided one half, and after the deed of partition was made, James did not assert claim to the portion of the land allotted to William under the deed, but said that it was owned by William. On two occasions before 1908, when James executed a mortgage upon the land to secure debts owing by him, he executed the mortgage upon one undivided half of the land, instead of the whole. James assessed all of the land for the year 1884 for taxation, in his own name, and paid the taxes for that year. Thereafter, the land was assessed in the name of their father, who lived upon it, and the father paid the taxes, until his death, in 1902. After 1902, the land was assessed for taxation in the name of their mother, who lived upon it and James testified, that he furnished her money to pay the taxes, while she testifies that she paid them, and whenever James, in person, had paid the taxes to the sheriff, that she had furnished the money with which to do same. William testified, that he was present, when the judgment on the notes for the deferred payments on the land was satisfied, and, that, he paid one half of it, and the receipt for the payments, which is in the record, is executed to them, jointly. From 1883, William had a family of his own and did not live on the land, but the father and mother and sister of appellant and appellee lived upon it and cultivated and used it. James was an unmarried man and made his home with the other members of the family upon the land, but does not seem to have engaged in working upon it, but very little. He erected a dwelling house upon the portion of it, which was allotted to him, in the partition, and made some repairs upon the family home, which was upon the land, in controversy, and did and caused to be done from time to time considerable work in the way of filling gullies, repairing fences and grubbing it off. The lands were rented every year and some of these contracts for their rental were negotiated by James, and when the rents were paid, they were sometimes paid to him and at other times to his mother, and on one or more occasions, when the rents were paid to James, in the presence of the mother, he turned over the money to her. William testified, that he had an arrangement with their father, that the father could live upon the farm with his family, and in consideration of the use of it was to pay the taxes, while James testifies that their father paid the taxes un-

der an arrangement with him to that effect. William testified, that after the making of the deed of partition, he directed his mother to continue to use and occupy the house and land allotted to him under the deed, which she did, and that James continued to live there with her until he married, when he forced the mother to leave the place, which left James there, in possession, and that, he then demanded the possession of it from James, which the latter refused. Although James claims to have furnished the money to pay the taxes, after the death of their father, he makes no explanation of why the land continued to be assessed for taxation in the name of their mother, while William claims that their mother was in the possession of it under the arrangement above mentioned. James makes no explanation of why his father should have suggested, that he should have Edward P. Martin Company convey the land to him and William, jointly, nor why, when William refused to have anything to do with it or its purchase, as James claims, that he did not then or thereafter seek to have the title to same put entirely in himself, nor why he never made any attempt to do so and never requested William to convey to him, although when he executed the mortgages upon his undivided one half of the land to secure his indebtedness, he would call upon William to join in the mortgage, which the latter did, and James makes no explanation of why he would only mortgage an undivided one half to secure his debts, instead of all of it, if he was the owner of all of it, as he claims. The evidence of the brothers is very contradictory upon nearly every question of fact. About the only fact about which they agree is, that their father paid the taxes, until the time of his death. James testifies, that when the partition deed was made he explained to William that his purpose was to keep the portion of land, which William received under that deed, from being sold and to enable him to pretendedly sell the other half of the land in order to secure money to satisfy his pressing creditors, and to conceal its ownership from his other creditors. William was not inquired of in regard to these statements of James, and does not make any denial of them. As to the contention that William refused to accept the deed of 1883, James fails, if the testimony of William and other evidences are to be believed. Of course there must be an acceptance of the deed in order to pass the title. An acceptance is a part of the delivery,

but if there is no acceptance, there is only an offer to deliver, but the acts which constitute the acceptance. and offer to deliver may not occur at the same time. To constitute a sufficient delivery of a deed of bargain and sale to pass the title, it must be accepted. Commonwealth v. Jackson, 10 Bush 424. If the deed is not accepted, the title remains in the grantor. If a deed is executed to two or more persons, and one refuses to accept it, the title to the portion conveyed to him remains in the grantor. No particular form, however, has to be gone through with in regard to acceptance, and no actual words of acceptance have to be expressed for the purpose. All that is necessary to be shown is, that the intention of the grantee is to accept the deed when the offer of delivery is made. Whenever, the grantee elects to claim under the deed, it is an acceptance of it. The delivery of a deed for a grantee, even to a stranger, is sufficient to pass the title when ratified or assented to by the grantee. An exercise of ownership over the property or claim of title under the deed is an acceptance. Harris v. Shirley, 3 J. J. M. 23; Shoptaw v. Ridgway, 22 R. 1495; Ward v. Small, 90 Ky. 198; Trimble v. Green, 3 Dana 360; Ford v. Montgomery's Heirs, 10 B. M. 180; Hughes v. Easten, 4 J. J. M. 572; Bunnell v. Bunnell, 111 Ky. 566. The fact, that James received the deed, manually, from the grantor and caused it to be recorded, is not conclusive, that William did not accept it, so far as it conveyed land to himself, as the grantor delivered it to James for William, as well as James, and if William assented to and ratified the acceptance, it was an acceptance by him, also, as both could not, manually, have received the deed and kept it. If William was present at the delivery and paid one-half of the cash payment, and thereafter claimed under the deed, as he and others testify, there could be no doubt of his assent and ratification or of its acceptance by James, for both of them. If James received the deed for both himself and William, by a previous understanding between him and William, he was acting as the agent of William, in the acceptance of the deed, which would make the acceptance by William as valid, as if done by him, in person. The chancellor, upon the conflicting evidence, was of the opinion, that William accepted the deed, and in the light of all the evidence, there is no reason to disturb his judgment.

(b). The claim, by James, that previous to the making of the deed of partition, in 1908, that he had become the sole owner of all the land by adverse possession of it, upon his part, must, also, be denied. When it is held, that William accepted the deed from Edward P. Martin Company, he and James were joint tenants of the lands. They had a unity of interest, unity of title and a unity of possession. They held under one and the same deed of conveyance, and their interests vested at one and the same time. There is controversy, as to which of the brothers, the father and mother were the tenants of, but this does not seem to be important. It is an old principle of the common law, that the possession of one joint tenant is the possession of the others—that is, the one in possession is the tenant or agent of each of the others, in holding the possession, and for that reason, the possession of one can not be adverse to the other, unless there occurs an actual ouster by one, who holds adversely, and his co-tenants must have notice of the ouster, either actually, or his holding and claiming the property, as his own, adversely to the rights of the co-tenants, must be accompanied with such acts and in such manner as to necessarily apprise his co-tenants of the adverse character of his holding. Middleton v. Fields, 142 Ky. 352; Russell's Heirs v. Mark's Heirs, 3 Met. 37; Riggs v. Dooley, 7 B. M. 236; Pope v. Brassfield, 22 R. 1616; Gill, etc. v. Fauntleroy's Heirs, 8 B. M. 177; Larman v. Huey's Heirs, 13 B. M. 436; Greenhill v. Biggs, etc., 85 Ky. 155; Gossman v. Donaldson, 18 B. M. 230; Poage's Heirs v. Chinn's Heirs, 4 Dana 50; Coleman v. Hutchison, 3 Bibb 209; Barrett v. Coburn, 3 Met. 570; Glass v. Glass, 7 R. 437; Malone v. Martin, 2 S. W. 909; Kidd v. Bell, 122 S. W. 23; Vermillion v. Nickel, 114 S. W. 270; Taylor v. Cox, 2 B. M. 429; Culver v. Culver, 7 S. W. 1074. The facts heretofore recited conclusively show that there was no such holding or claim of ownership by James, as would set the statute running in favor of one joint tenant against another. The fact, that, William did not receive any of the rents or profits from his holding, under the circumstances does not support a claim of adverse holding on the part of James, as the property was occupied by their father and mother, and for a time, by an unmarried sister. The father paid the taxes, and the arrangement was not an unnatural one for a son to agree to, in behalf of aged and indigent parents.

(c).   The result of the finding upon the issue as to the acceptance of the deed from Edward P. Martin Company, by William, and as to the adverse holding by James disposes of the contention, that the deed of partition, so far as it was a conveyance of one half of the land, in severalty, to William, was without consideration, as William, being the owner of an undivided one-half, the consideration of the conveyance to him of a portion, in severalty, was the conveyance by him of the remainder of it in severalty, to his co-tenant.

(d).   The foregoing would seem to dispose of the contention of James, that the deed of partition was made by him in fraud of his creditors, with the knowledge of William, and was therefore void.   If William was a joint owner of the land and received under the deed nothing more than his own, his acceptance of the conveyance to him, in severalty, and the conveyance by James to him could not possibly be in fraud of anybody's creditors, as James' creditors would be without right to subject William's portion of the land to the payment of the debts, which James owed them.   So, the contention of James only amounts to a claim, that William knew, that James was going to dispose of his portion of the land, in fraud of his creditors, which would not affect the conveyance to William.   If, however, it was otherwise, the statute, which makes a conveyance, in fraud of creditors, void as to them, does not make it void as between the parties to the conveyance.   While the law will not enforce any executory contract made for the disposition of property, in fraud of one's creditors, but, will leave the parties, where it finds them, yet where a contract has been executed by the execution and delivery of a deed of conveyance, though made in fraud of the grantor's creditors, the title passes to the grantee and the grantor can not resist a recovery of the property by the grantee, upon the sole ground that he made the deed for the purpose of defrauding his creditors.   Bibb v. Bibb, 17 B. M. 232; Elmore v. Elmore, 22 R. 856; Jones' Admr. v. Jenkins, etc., 83 Ky. 394; Brookover v. Hurst, 1 Met. 668; Keeton v. Bandy, 74 S. W. 1047; Norris v. Norris' Admr., 9 Dana 317.

(e).   The adverse possession claimed by James, not existing, until the lands were partitioned, in 1908, the time, that has intervened, since that time, is not sufficient, under any circumstances, to have given James title to

the land in controversy. Further, William's statement is to the effect, that he delivered the possession of the portion of land allotted to him under the deed of partition to his mother, in 1908, and that she was, thereafter, holding the possession for him, and in this he is corroborated by his mother and certain circumstances, as well as by proof by other members of the family, that James, after the partition conveyance, did not claim the land, but conceded its ownership to William.

(f). The claim, of James, that he should have a lien upon the land, for improvements made upon it, is of such vague character, that no judgment could be rendered upon the subject, as he fails to prove the value of any of the services or improvements or to definitely show of what they consisted, or when they were made. The deed of partition would seem to be a settlement of any claims of that kind for any improvements made previous to its execution. The dwelling house erected by him is upon the portion of land received by him, under the partition deed. He does not show what the repairs were, which he made upon the dwelling house received by William, in the partition, nor their value nor whether they were made before or after the partition. He claims to have paid the taxes upon the land, sued for, since 1908, but this is denied, and the receipts are executed to his mother, who states that she paid them. Conceding that James made the repairs upon the house, at his expense, and paid the taxes, and filled up certain gullies upon the land, and repaired the fences, in the light of the fact, that he enjoyed a home upon the land since 1883, and received, as he says, all the rents and profits during that time, or, at least, since the year 1908, he could not equitably be entitled to have a judgment against William for improvements, in the absence of any showing of what the improvements consisted of and their value or when made or an accounting of the benefits received by him from the land, as it is conceded that William never, at any time, received any benefits from it.

The judgment is therefore affirmed.