## Carpenter v. Arnett et al.
(Decided June 16, 1936.)

W. R. PRATER for appellant.

ALLEN & BYRD for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER——Reversing.

This suit is by the appellant, Mrs. Cynthia Ann Carpenter, against the heirs of her late husband, Irvin Carpenter, to set aside deeds by which her title to a large tract of land was conveyed to him. The grounds of the suit are that the deeds were executed without consideration and by reason of false and fraudulent representations. The judgment dismissed the petition.

There is really no conflict in the evidence. On May 1, 1925, Mrs. Carpenter over the protest of her husband had signed as surety notes amounting to $2,500, of their son, Fred Carpenter. It was proved by several witnesses that Mr. Carpenter expressed great fear time and again that her suretyship would "break them up," and that he was trying to get his wife to convey her property to him in order to escape such disaster. She was reluctant, even after they had gone to the county seat for the purpose of making the deeds. At that time he induced her sister, and perhaps others, to intercede and persuade her to convey the property to him. He stated to a number of witnesses, before and afterward, that he intended to reconvey it to her when the danger had passed. Some statements were that he would either deed it back or will it to her. Some of these statements were made in the presence of the wife. On May 13, 1925, she and her husband executed a deed to the property to George Carpenter, the latter's son by a former marriage, and he promptly executed a deed to it to his father, Irvin Carpenter. Suit on the notes of Fred Carpenter and his mother as surety was filed February 26, 1926, ten months after the conveyance, but on April 30, 1928, judgment was rendered in their favor. Irvin Carpenter died in April, 1934, without having reconveyed the property to his wife.

Over against this uncontradicted testimony coupled with the fact that Mrs. Carpenter had the complete defense of coverture and in no event could have been held liable on the notes of her son, we have only certain circumstances presented by records.

The greater portion of the land involved was owned by Irvin Carpenter for a long time. In 1905 he conveyed it to his wife, and during the next four years had title to smaller parcels which he acquired

likewise placed in her name. During this time he was being sued as a surety on the bond of a former sheriff of Magoffin county, and did this in order to escape liability and the payment of any judgment which might be obtained against him. Judgment for $1,200 was rendered against the sheriff and his sureties. In 1910 suit was instituted by Carpenter's cosureties to set aside the conveyance which he had made to his wife, but the record does not show what disposition was made of it.

On the day Mrs. Carpenter conveyed the property to her husband through his son, he executed a deed to her of a life estate in certain part of it, which was described as being one-third in value of the entire real estate. But this conveyance was not to take effect until his death. At the same time he made a will devising his wife a "dower interest" in the land conveyed by that deed and, in addition, bequeathing $750 as her exemption, and one-half of the surplus personalty. These instruments meant nothing, for they gave to the wife only what she would be entitled to receive under the statutes of descent and distribution. In October, 1933, which was long after any danger arising from the suretyship obligation had passed, Carpenter made another will, but the only change in the devise to his wife was to give her a life estate in his household furnishings and farming equipment. It appears that a few days before his death Carpenter made a third will, but it is not in the record. It seems, however, that this was contested by some of the testator's children and that Mrs. Carpenter and the heirs agreed upon a judgment setting it aside. So the effect of the two wills remaining is practically nil, so far as the widow is concerned, and no part of the land conveyed to her husband has ever been returned to her.

It is further shown that in April, 1913, Irvin Carpenter and his wife executed some sort of trust deed to himself and one of his sons. It is not in the record. The testimony is that it was for the purpose of making a fair distribution of the property among the children of the parties—one group being Mrs. Carpenter's stepchildren. This trust deed was executed in duplicate. One copy was kept in a trunk at home, and there is evidence, not contradicted, that Carpenter was dissatisfied with the arrangement and de-

clared several times that he never intended the trust deed to be delivered or to take effect. It was testified that the instrument was taken to town for the purpose of obtaining the description of the land in preparing the deeds sought to be set aside. There is other evidence that it was destroyed before that time. The other copy of the deed was held by the son named as cotrustee, and he put it to record shortly after his father's death.

There is testimony that Carpenter said his wife was being threatened with suit on the surety notes, while, as a matter of fact, none of those notes was due at that time and suit was not filed on them until long thereafter. Of course, as long as the notes were outstanding the possibility of suit existed, but the real point is not whether there was a threat, but whether Carpenter's false statements led his wife to believe there was danger when there was not. The conclusion is inescapable from all the circumstances that this was but the means for procuring the conveyance. Even if Carpenter stated to be a fact that which he did not know to be a fact, and thus obtained the deed, he cannot be allowed to retain the fruits of the misrepresentation upon the ground that he did not know the statements to be untrue. Davis v. Yancy, 104 S. W. 697, 31 Ky. Law Rep. 1155. The mere assumption that Mrs. Carpenter was present when the "dower deed" and the will were executed, and freely consented to the transactions, as appellant argues, is not sufficient to overcome the clear evidence of the procurement of the deeds from the wife by false representations.

While cross-examination tended to weaken some of the evidence, by no means can it be regarded as being wholly discredited. The evidence analyzes itself and clearly manifests that the execution of the deeds was obtained by false representations and with a purpose to divest the wife permanently of the title in the property. The fact that the husband had owned it can have no bearing. The parties had been married many years. He conveyed the property to his wife for a bad, illegal motive, and the courts must look impatiently upon his efforts to reclaim the property or rescind his conveyance, for equity will never aid a party to a fraudulent transaction and relieve him from the consequences brought about by his efforts to de-

feat the payment of his debts, or protect his property from the claims of his creditors. We are of. the sure conclusion that this is a case where the grantor was led to make the conveyance in ignorance of her legal rights and upon the faith of her husband's representations, which were false, first, that she was liable on the obligation as surety and was going to be or had been sued, and, second, under the promise of reconveyance or a devise.

It is where the party seeking relief is wholly guilty of fraud, or the grantor and grantee equally acted wrongfully or illegally, i. e., are in pari delicto, that a court of equity will leave him or them where they are to abide the consequences of the wrong doing. When that is not the case and there has been the imposition of duress, fraud, threats, or undue influence, the party thus imposed upon, although participating in the illegal or fraudulent transaction, may be relieved as against the other. Menne's Heirs v. Menne, 25 S. W. 592, 15 Ky. Law Rep. 774; Sanford v. Reed, 85 S. W. 213, 27 Ky. Law Rep. 431; Coffey v. Coffey, 232 Ky. 179, 22 S. W. (2d) 589; Stiefvater v. Stiefvater, 246 Ky. 646, 53 S. W. (2d) 926.

We are of the opinion that the court should have sustained the petition and set aside the conveyances.

Judgment reversed.