## Martin v. Martin et al.

## Martin et al. v. Security Trust Co. et al.

Feb. 9, 1940.

J. F. Stewart, Special Judge.

412

Joe P. Tackett, Joseph D. Harkins, Jr., and Joseph D. Harkins for appellant Ava Martin in first case.

C. B. Wheeler and Combs & Combs for H. D. Martin and others.

J. D. Harkins and Joe P. Tackett for appellee Ava Martin in second case.

Hunt & Bush for appellee Security Trust Co.

OPINION OF THE COURT BY JUDGE FULTON—Reversing on appeal of Ava Martin and affirming on appeal of Ava Martin Frazier, Administratrix. Affirming on second appeal.

The two appeals captioned above were, on motion made in this court, heard together and will be disposed of in one opinion.

The first action was filed by Ava Martin, administratrix of the estate of T. E. (Tom) Martin, against Mousie Martin, a sister of Tom Martin, seeking to recover approximately $30,000 in bank deposits transferred to her by Tom on November 4, November 28, and December 8, 1930, it being alleged that such funds were the property of Tom Martin and that his sister was to hold the funds in trust for him. During the progress of the action Ava Martin, the widow of Tom Martin, remarried and as Ava Martin Frazier filed an intervening petition in the action in her individual capacity, the intervening petition being made a counterclaim against herself as administratrix and a cross petition against Mousie Martin. This pleading alleged that she and Tom Martin were married on December 15, 1930, and that the transfers of the bank deposits by him to his sister were made on the eve of their marriage with the intention on his part to defraud her of her distributive portion of his personal estate and in fraud of her marital rights. She prayed judgment for one-half of the amount of the bank deposits transferred. Issue was joined in the action during the lifetime of Mousie Martin. During the pendency of the action Mousie died and M. T. Stumbo, sheriff of the county, was appointed administrator of her estate. While he was serving as such an agreed order was entered reviving the action against him as administrator. Stumbo was later removed as administrator by the county court and a new administratrix appointed. A petition for revivor against the new administratrix appears in the record, though there is no order filing it, and a summons was issued on this petition directing the summoning of Lilly Clark, administratrix of the estate of Mousie Martin. The return on the summons shows execution on Lillian Clark but not in her representative capacity. No order of revivor was ever made against the new administratrix. Before judgment was rendered a motion was made to substitute the new administratrix as defendant in place of the former administrator but this motion was not acted on and no order of substitution was made.

Shortly after the death of Mousie Martin, appellee,

H. D. Martin, brother of Mousie and Tom, filed an intervening petition in which he alleged that Mousie had transferred to him bank deposits representing the money in controversy. By this pleading he asked to be made a party defendant and substituted in lieu of Mousie and prayed that he be adjudged the owner of the certificates of deposit.

On final trial the court denied the relief sought and dismissed the action. From that judgment Ava Martin Frazier, individually and as administratrix, prosecutes this appeal against H. D. Martin and the administratrix of Mousie Martin.

The second action began as one of interpleader filed by the Security Trust Company of Lexington against Ava Martin, administratrix of T. E. Martin, and Mousie Martin. That bank alleged that it had in its possession state warrants of the face value of $9,915.38 and a bank deposit of $37.22 in the name of T. E. Martin and that both of the named defendants were making claim thereto. Each of the named defendants responded, claiming the property. After the death of Mousie Martin the same pleadings and motions were filed and orders entered concerning revivor and substitution as were made in the first action. H. D. Martin also came into this action as he did in the first action as a claimant of the money by gift from Mousie Martin. On final submission the trial court adjudged that Ava Martin, administratrix of T. E. Martin, was entitled to the warrant and money. From that judgment H. D. Martin and the administratrix of Mousie Martin prosecute this appeal against the Security Trust Company and Ava Martin, administratrix, as well as against Ava Martin individually, although, individually, she was never a party to the action.

The material evidence in the case, furnished largely by Ava and Mousie Martin, discloses that Ava and Tom kept company with each other for a period of approximately two years before their marriage on December 15, 1930. Ava testifies that they became engaged about six months before their marriage. On November 4, 1930, Tom transferred to his sister, Mousie, a deposit in the Pikeville bank of $2,740.86. On November 28, 1930, he transferred to her a deposit of $22,307.77 in the Ashland Bank. On December 8, 1930, he transferred to her

a deposit of $5,070.80 in a Frankfort bank and on December 5, 1930, the deposit of $9,915.38 in the Security Trust Company of Lexington. This resulted in a transfer of practically all property owned by him, although it seems that he did own a small tract of land. After the marriage they resided for a short while, probably two or three months, in the town of Martin, where they did light housekeeping. Tom then went to live with his sister, Mousie, and his brother, H. D. Martin, in the country some miles from Martin. He lived there until the date of his death, January —, 1933. Ava continued to reside in Martin at the home of her sister where she and Tom had lived together, but on frequent occasions visited her husband in the country for varying periods of time. Ava explains that Tom left their home and went to the country because the trains in town made him nervous. While this living apart of the husband and wife, interspersed with visits by her to him, presents rather a unique situation, there is not a line of evidence in the case that any trouble or difficulty ever took place between them. Shortly before Tom died, his wife made him a visit and stayed with him approximately three weeks. She was not present at the time of his death. She states that she had been away three or four days when he died, having gone back home to nurse members of her family who were ill with influenza. She testified that prior to the marriage Tom had told her about the various amounts of money and property he had and the banks in which it was deposited.

Mousie testified that Tom made outright gifts to her of the bank deposits, having them transferred from his name to hers. After the deposits were placed in her name she checked most of the money out and redeposited it in a different bank. She further testified that Tom assigned as a reason for making the gifts the fact that he feared that Ava was going to sue him and that another woman who had obtained a judgment in a bastardy proceeding against him probably twenty years ago might try to collect the judgment. After the transfer of the money to Mousie she on numerous occasions issued checks to pay obligations of Tom. She admitted that whenever Tom wanted money she gave it to him. On August 26, 1931, she wrote a letter to the Security Bank enclosing a check payable to Tom for the amount

of the deposit in that bank transferred to her by Tom on December 5, 1930. In this letter she requested a transfer of the account back to Tom. Acting on this letter the Security Bank transferred the account back to Tom's credit. Tom also wrote one or more letters to the Security Bank in connection with the re-transfer of this deposit. In November and December following, pursuant to correspondence with Tom, the Security Bank invested the funds in state warrants aggregating $9,915.38 and continued to hold the warrants for him for safe keeping pursuant to his directions. Shortly after Tom's death Mousie wrote the Security Bank, wanting to know what warrants they held for her. In reply the bank notified her that the warrants were held in the name of T. E. Martin.

The evidence is such as to leave no doubt that the transfer of the money by Tom to his sister was for the purpose of preventing Ava, his intended wife, from sharing therein. The transfer of this large amount of money, constituting practically all of his estate, taken in connection with the fact that thereafter Mousie advanced him money whenever he needed it and transferred back to him the deposit of more than $9,000 in the Security Bank, demonstrates beyong peradventure of a doubt that an understanding existed between him and Mousie as to the purpose of the transfer and indicates very strongly that she was acting as a mere depository of his funds. Mousie states that one of the motives actuating her brother in making the transfer was to prevent Ava from getting any of his money. True, she says that his desire was to prevent Ava from getting any of the money by virtue of an apprehended breach of promise action but, withal, it is apparent that the purpose of the transfer was to prevent her from securing any part of his estate.

It is true that the evidence is not of a character to justify a recovery of the money by Tom's administrator since no positive trust in his behalf is shown by the evidence. Having made the gifts, even though he made them only to defraud creditors or to defraud an intended wife, he could not have recovered the money from Mousie. One who makes a voluntary conveyance or transfer of property to another for the purpose of defrauding creditors may not recover such property from

the transferee. Carpenter v. Arnett et al., 265 Ky. 246, 96 S. W. (2d) 693; Sullivan v. Sullivan, 179 Ky. 686, 201 S. W. 24. Tom Martin was therefore in no position to recover the money he had given to Mousie. His administrator, having such rights only as he had, had no cause of action against Mousie. It is apparrent, therefore, that the trial court was correct in so far as a recovery of the money was denied to Tom's administrator.

Before proceeding to a discussion of Ava Martin's individual right of action, it is necessary to consider a question of evidence, namely, whether or not her testimony establishing the facts above recited was competent. It is contended that much of her testimony was not competent since she testified as to transactions with, and acts done by, a deceased person. Ordinarily, of course, one may not testify for himself as to any transaction with, or any act done, or omitted to be done, by one who is dead when the testimony is offered. Civil Code of Practice, Section 606, subsection 2. And it must be conceded that a considerable portion of the testimony of Ava was within the inhibition of this section of the Code. However, we find that exceptions were filed to her testimony but were overruled by the trial court and no exception was taken to this ruling. The order overruling the exceptions was originally omitted from the record in this court but was brought up as a supplemental record—it shows that no exceptions were taken to the court's ruling in overruling the exceptions. For this reason we must consider as competent all of her testimony, since it was so considered by the trial court. It is a well settled rule of practice that when exceptions to depositions are passed on by the trial court and no exception is taken to the ruling of the court, this court will regard such exceptions as having been waived and treat the case as if no question had been made as to the competency of the witness or as to the admissibility of his testimony. Levy v. Doerhoefer's Executor, 188 Ky. 413, 222 S. W. 515, 11 A. L. R. 207; Hancock v. Chapman, 170 Ky. 99, 185 S. W. 813; Fears v. United Loan & Deposit Bank et al., 172 Ky. 255, 189 S. W. 226.

A question of pleading is also raised in that it is contended that the petition of Ava Martin individually stated no cause of action by reason of her failure to allege that at the time of the transfer of the money by

Tom to Mousie she and Tom were engaged to marry. No doubt it would have been much better pleading to have alleged this fact, but we take the view that the failure to do so was not a fatal defect. Were it essential to allege and prove such a fact, there could ordinarily be no recovery in this character of action since in a majority of cases the engagement to marry at the time of the transfer would be a fact known only to the woman, whose testimony to that effect after the husband's death would be incompetent on exceptions properly filed thereto. It seems that the allegations to the petition are sufficient if they allege a transfer of property with the intent to defraud an intended wife of her marital rights, whether or not there was an actual engagement. In this particular case the allegation that the transfers were made on the eve of the marriage with intent to defraud the plaintiff of her distributive portion of the personal estate of T. E. Martin is in substance and effect an allegation that he was contemplating marriage with the plaintiff. It is generally held that a transfer of property may be avoided where the grantor made it with an intent to marry and to defeat the marital rights of any person he might marry, regardless of the fact that no particular person whom he was to marry had been selected. It is not necessary that the fraudulent intent be directed against any particular person. 30 C. J. 525; Beechley v. Beechley, 134 Iowa 75, 108 N. W. 762, 9 L. R. A., N. S., 955, 120 Am. St. Rep. 412; Deke v. Huenkemeier, 289 Ill. 148, 124 N. E. 381; Higgins v. Higgins, 219 Ill. 146, 76 N. E. 86, 109 Am. St. Rep. 316. We conclude that the failure to allege an engagement was not a fatal defect in the petition. The allegations and proof were both sufficient to show a transfer of the money with the intent to prevent an intended wife from obtaining marital rights in the money.

This brings us to a consideration of the main question in the case, which is: May a man, in contemplation of marriage, with the intent and purpose to prevent an intended wife from obtaining an interest in personal property by reason of his marriage to her, make a gift which will be effectual to prevent his widow from asserting her marital rights in the property in the hands of the donee?

It must be conceded that the decided weight of au-

thority is that an absolute bona fide gift of personalty by a man contemplating marriage with a woman, or even by a husband during his life, is not a fraud on the marital right of the wife, or intended wife, even though made with the intention and purpose of depriving her of the right of sharing in such property. 13 R. C. L. 1081-1085; 30 C. J. 523; Potter Title & Trust Co., Guardian, etc., v. William H. Braum, Ex'r, etc., 294 Pa. 482, 144 A. 401, 64 A. L. R. 463, and cases cited in annotation thereto. This rule is generally stated with the qualification that if a transfer by a husband be colorable merely, that is, a mere device by which the husband does not part with absolute dominion over the property, it will be considered a fraud on the wife's marital rights, and it is also generally held that a gift causa mortis by a husband to a third person is a fraud on the wife's marital rights, where the gift is made to prevent her sharing in the property, since the gift does not take effect until the death of the donor. As to real estate the rule is different. It is well settled that a conveyance of real estate made by a man to prevent an intended wife from securing marital rights therein is ineffectual for that purpose.

In our state, however, we find that no distinction is made between real and personal property. In Murray v. Murray, 90 Ky. 1, 13 S. W. 244, 11 Ky. Law Rep. 815, 8 L. R. A. 95, it was held that a gift by a husband to a son of a large portion of his personal property with intent to prevent the wife's sharing therein was a fraud on the wife marital rights. It was held that an intention to defraud the wife must be proved but that a transfer of a bulk of the husband's property under the circumstances disclosed raised a prima facie case of fraud.

In Manikee's Adm'x v. Beard, 85 Ky. 20, 2 S. W. 545, 8 Ky. Law Rep. 736, the right of a father to make reasonable advances to his children during the life of his wife was recognized but it was held that when a gift is made to a child for the purpose of defrauding the wife and with the intent to prevent her from sharing in the husband's personal property it would be set aside to the extent that it might affect her rights as a widow.

In Gibson v. Gibson, 12 Ky. Law Rep. 636, it was held that a gift by the husband of the whole of his estate (real and personal) to his children by a former mar-

riage, during his last illness, with the intention of preventing his wife from sharing in his estate, must be set aside as a fraud on the wife's marital rights.

In Wilson v. Wilson, 64 S. W. 981, 23 Ky. Law Rep. 1229, where a man, after contracting to marry a second time, gave away the bulk of his estate, consisting of bank stock, to his children by a former marriage so as to deprive the second wife of her marital rights therein, it was held that the transaction was a fraud on the marital rights of the intended wife and she was entitled to her distributive share therein.

The distinction made in the decided cases between real estate and personal property is largely based on the fact that as to real estate a wife after marriage acquires an interest therein in the way of inchoate dower of which she cannot be divested by any act of her husband, while as to personalty such is not the case. As to personal property, the authorities generally hold that the wife after marriage acquires no vested rights therein and the husband may dispose of same in any manner and for any purpose he pleases without such disposition being a fraud on his wife's marital rights. In many jurisdictions so holding, however, the wife has no quasi vested right in the husband's personal property during his lifetime such as given her under our law, Kentucky Statutes, Section 2132, which provides that on the husband's death the wife is entitled to one-half of the surplus personalty left by him—a right which a husband may not defeat by a contrary provision in his will. Whether or not the wife has a quasi vested interest in the husband's personalty, we do not regard the distinction made as a sound and rational one. After all, an action of this character is based on a fraudulent act of a husband, or intended husband, seeking to deprive a wife, or intended wife, of a right to share in his property. A husband owes a wife the legal obligation to support and maintain her according to her station in life and the moral obligation to provide as well as he may for her support and maintenance after his death. It seems to us that a transfer by a man of the bulk of his estate, whether real or personal, actuated by this sinister purpose, is a violation of the legal obligation he owes his wife to maintain her according to her station in life

as well as of the moral obligation imposed on him to provide for her after his death.

After a careful consideration of this question we are convinced of the soundness of the rule established in our court by the cases mentioned. We reaffirm the conclusion reached in those cases, namely, that a man may not make a voluntary transfer of either his real or personal estate with the intent to prevent his wife, or intended wife, from sharing in such property at his death and that the wife, on the husband's death, may assert her marital rights in such property in the hands of the donee.

Having reached this conclusion it is apparent that the appellant, Ava Martin, would have been entitled to judgment against Mousie Martin had she not died before the trial of the action. Since the appellee, H. D. Martin, asserted title as donee to the funds transferred by Tom to Mousie and alleged that he was now in possession of these funds and asked that he be substituted as the defendant in Mousie's place, Ava should have been awarded judgment against him.

It is contended by the administratrix of Mousie Martin, however, that no judgment could have been rendered against her because of the failure to revive the action against her. There is no question of revivor of the action since, by agreement of the former administrator, the action was revived against Mousie's estate. When the present administratrix was appointed after the removal of the former administrator, the plaintiff in the action had the right on notice to her to have her substituted as defendant in place of the former administrator. The execution of the summons issued on the petition for revivor against the present administratrix was sufficient notice. As above indicated, a motion was made to substitute the present administratrix as defendant in place of the former administrator and as the present administratrix had received notice the trial court was authorized to substitute her as defendant and should have done so. However, no such order was made and in this state of case we are not authorized to direct the entry of a judgment against the present administratrix. It is likely that there will be no necessity of a judgment against the administratrix in order to afford

complete relief to the appellant but in the event such a judgment becomes necessary to afford complete relief the appellant is at liberty on the return of the case to the circuit court to have the present administratrix substituted as a party defendant and proceed accordingly.

On the appeal of H. D. Martin and the administratrix of Mousie Martin against Ava Martin, administratrix of T. E. Martin, it is apparent from the statement of facts above that the trial court correctly adjudged that T. E. Martin's administratrix was entitled to the state warrants and the bank deposit in the Security Bank. While Tom had transferred the original bank deposit to Mousie as a gift, she had transferred it back to him in the same manner. Both she and Tom were instrumental in having the money re-transferred to Tom's credit. The money, after being re-transferred to Tom's credit was by his direction used to purchase the state warrants in his name with the apparent acquiescence of Mousie. Tom continued to regard the bonds as his property until the time of his death. Mousie did not question his ownership thereof until after he died. The re-transfer of the money by her to Tom, in the absence of any explanatory evidence, must be considered as a gift by her to him and it operated to place the money in the same position as if no transfer had been made by Tom to her.

It becomes necessary at this point to discuss an additional question. These cases had been decided by the court and the opinion prepared prior to February 1, 1940. On that day there was tendered a supplemental transcript of the record showing proceedings had in the trial court in January culminating in the entry of a nunc pro tunc order showing that the trial court sustained exceptions to portions of Ava Martin's testimony, certain of these portions being testimony mentioned above. The motion to file this supplemental record was handed to the court by the clerk while the opinion was being read to the court preparatory to its being handed down on February 2. Were we to permit the supplemental record to be filed, such action would necessitate a re-writing of the opinion. We have considered the matter carefully and reached the conclusion that if we permit the filing of this supplemental record, the effect of which would be to cause us to reject as incompetent certain testimony

which we considered competent, nevertheless our decision would not be changed. For this reason, and on account of the unusual circumstances resulting in the making of the motion, we conclude that the motion to file the supplemental record should be overruled and that the opinion should stand as written.

On the first appeal the judgment is reversed on the appeal of Ava Martin, with directions to enter a judgment against H. D. Martin for $15,059.71, with interest from September 29, 1934, the date of the transfer of the funds by Mousie to him. On the appeal of Ava Martin Frazier, administratrix of T. E. Martin, the judgment in the first case is affirmed. In the second case the judgment is affirmed.