DEWEY CHAMBERS, APPELLEE, V. DOLORES MARTIN, APPELLANT.

86 N. W. 2d 49

Filed November 22, 1957. No. 34246.

*Beber & Richards* and *William B. Woodruff*, for appellant.

*Max Fromkin* and *M. Robert Fromkin*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action in equity whereby plaintiff seeks to have voided a deed to certain real estate, to have himself declared to be the sole owner of an automobile, and to secure possession of furniture which he alleges he owns, which is in the possession of the defendant. Plaintiff pleaded fraud, threats of bodily harm, and duress. Defendant denied generally, and claimed that the real estate was conveyed to her as a gift; likewise that an undivided half interest in the automobile was a gift; and that the furniture was a gift.

Issues were made and trial was had. The court decreed that the deed be canceled and voided, and quieted

title to the real estate in the plaintiff. The court held that the ownership of the automobile was solely in the plaintiff, and that the defendant had no interest therein. The court ordered the defendant to deliver the furniture involved in the action to the plaintiff. Not involved in the pleadings, but in the evidence, was a matter of personal clothing of plaintiff which the defendant was ordered to turn over to the plaintiff. Defendant appeals.

We affirm the judgment of the trial court as to all matters except the ownership of the furniture. We decree title to the furniture to be in the defendant.

The action is here for trial de novo. Plaintiff at time of trial was a man 58 years of age and for many years had been gainfully employed in a packing plant at Omaha. He owned the residence property involved in this litigation. It was subject to a mortgage of $450. He had revenue from renting rooms in it. He also operated a beauty parlor in it. He had been divorced. He was required to make child support payments. He was delinquent in those payments in a substantial amount in August 1955, although he claimed he had made the payments but had not secured receipts.

Defendant was 29 years of age, had secured a decree of divorce which was not final, and was gainfully employed.

Plaintiff and defendant met in August 1955. Shortly thereafter plaintiff became a roomer in defendant's home. About that time the furniture involved here was delivered by the plaintiff to defendant's home. We discuss it later herein. On August 31, 1955, the first of two automobiles was purchased. We return to that later herein.

On September 19, 1955, plaintiff suffered a broken leg at his work. He was ambulatory but restricted in movement for some time. He resided at defendant's home. Prior thereto plaintiff had given defendant money to pay bills. He now began to sign his checks and deliver them to her, and to give her the rent money. She paid

his bills and at least some of hers from that source. This payment of money from plaintiff to defendant in various ways continued well into the summer of 1956.

Early in this acquaintanceship the parties began to talk of marriage. Defendant was not then free to contract a marriage. This marriage discussion continued until about a week before this action was filed.

Defendant was advised of the mortgage on plaintiff's home and the delinquent support payments. She testified that she was concerned as to what her rights would be if they became married. She consulted a lawyer. She advised plaintiff that the lawyer said he (plaintiff) could use an "heirs deed" which would protect the plaintiff and his heirs. A few days later on October 24, 1955, she brought a lawyer to the home with a warranty deed prepared wherein the property was conveyed to the defendant in fee simple, subject only to the mortgage.

Plaintiff wanted to make the payment of the child support delinquencies. He had talked to the mortgagee about increasing the mortgage to secure the money. He asked the lawyer if the giving of this deed would interfere with the getting of the new loan. He was told that it would. He then asked defendant to withhold recording the deed until the new loan was consummated. Defendant agreed. She retained the deed. The new loan was consummated and the papers recorded December 9, 1955. Plaintiff paid or caused to be paid the amounts due on the child support payments. Plaintiff returned to live in his own house in December 1955. Defendant, without advising plaintiff of it, recorded the deed to her on January 10, 1956. Plaintiff found out about it from friends who read about it in the papers. It did not cause plaintiff's regular calls on defendant to cease.

Plaintiff remained in possession of the home as before. Defendant claims she received the rents. She did, apparently, both before and after the deed, receive

money, the source of which was rents. It was not, however, paid to her as rent money to which she claimed to be entitled.

It should be stated that there is evidence, both before and after the giving of the deed, of threats of defendant to inflict bodily injury on the plaintiff by the use of a knife or a pistol. These are not related with any positiveness to the giving of the deed. They were interesting interludes along the way.

All of this came to an end in August 1956 at the beginning of the week in which plaintiff says they were supposed to get married. One evening defendant took plaintiff for a blood test, which he apparently had. The evidence as to events of the rest of the evening is in conflict. Anyway, the next morning plaintiff sought sanctuary in the police station and defendant surrendered a pistol to the authorities. This litigation followed.

It is patent that defendant started on a plan to secure title to plaintiff's property. She used his delinquent child support situation as a vehicle. She misrepresented a material fact to him as to the purpose and effect of the deed which she proposed he would execute. He wanted to protect, and did protect, the payment of his child support obligation. She wanted to and did secure title to the real estate. She paid no consideration or other valuable thing for it. There is no evidence of an intent of plaintiff to make a gift of his real estate to the defendant.

A deed to valuable land, if procured for no consideration by fraudulent misstatements of facts, may be canceled in equity where the circumstances are such that the grantor was justified in relying on the statements and did so in good faith. Armstrong v. Randall, 93 Neb. 722, 141 N. W. 829.

It appears to be true that plaintiff participated in a scheme to enable him to protect his property from future obligations. But it is not shown that he had any that were of pressing concern.

The Court of Appeals of Kentucky has held: "It is where the party seeking relief is wholly guilty of fraud, or the grantor and grantee equally acted wrongfully or illegally, i. e., are in pari delicto, that a court of equity will leave him or them where they are to abide the consequences of the wrongdoing. When that is not the case and there has been the imposition of duress, fraud, threats, or undue influence, the party thus imposed upon, although participating in the illegal or fraudulent transaction, may be relieved as against the other." Carpenter v. Arnett, 265 Ky. 246, 96 S. W. 2d 693. See, also, Grider v. Manisera, 11 Cal. App. 2d 355, 53 P. 2d 982; Meyer v. Barde, 112 Ore. 197, 228 P. 121.

We affirm the judgment of the trial court in holding the deed to be void and quieting title in the plaintiff.

We go next to the question of ownership of the automobile. On August 31, 1955, plaintiff and defendant signed a contract for the purchase of a new automobile. Both participated in its selection. Plaintiff furnished all or substantially all of the money for the down and monthly payments. In January 1956 defendant negotiated the exchange of this automobile for a 1956 model car. Plaintiff participated in the selection of the car and made most of the down payment. Title was taken in the name of plaintiff and defendant or survivor. Plaintiff never drove either car. He did not have a driver's license. Defendant had the possession and use of the car. Plaintiff claims ownership of the car. Defendant claims to own an undivided half interest.

It is in evidence, without dispute, that the payments on the car became delinquent in the summer of 1956, and that the finance company repossessed the car and gave possession to the plaintiff, who has since been making the payments. Defendant's interest in the car being divested, she is in no position to complain of a decree vesting title, as to her, in the plaintiff. The decree of the trial court on that matter is affirmed.

This brings us to the furniture. As above pointed

out, it was moved to defendant's home by the plaintiff early in the period here involved. The uncontradicted evidence is that plaintiff told defendant she could "have it." We think this sufficient to show a gift.

The trial court erred in ordering defendant to return the furniture to the plaintiff. We decree that ownership of the furniture is in the defendant.

Plaintiff testified that defendant was keeping certain items of his personal clothing. The court directed its delivery to plaintiff. The defendant testified that plaintiff was welcome to come and get his clothes. There does not seem to be any area of dispute there.

The decree of the trial court is affirmed as to all matters save that of ownership of the furniture. We decree title to be in the defendant as to the furniture involved, and the district court is directed to modify its decree accordingly.

All costs are taxed to the defendant.

AFFIRMED AS MODIFIED.