MARJORIE EDITH DENNIS, Plaintiff-Appellant, *v.* DAVID PAUL DENNIS *et al.,* Defendants-Appellees.

(No. 70-94;

Third District—June 15, 1971.

Hartzell & Glidden, of Carthage, and Leon L. Lamet, of Warsaw, for appellant.

Charles A. Scholz, of Quincy, and Samuel J. Naylor, of Carthage, for appellees.

Mr. JUSTICE McNEAL delivered the opinion of the court:

Plaintiff Marjorie Edith Dennis appeals from dismissal of her complaint to set aside a trust made by her husband a few days before their marriage. The issue presented for review is whether or not the trial court ruled correctly in dismissing her amended complaint as modified and an amendment thereto.

The substance of plaintiff's allegations follows. Clenard Oren Dennis was the principal stockholder and active in the management of the Dennis Chicken Products Company, Augusta, Illinois. From September 1956 until May 1959 plaintiff was employed as a bookkeeper and served as secretary of the company, and in the performance of her duties she acquired a knowledge of Dennis' holdings in the company, his interests in the Davis-Cleaver Produce Company, and his real estate holdings.

In the fall of 1956 Clenard commenced to court the plaintiff. In February 1959 when he was 62 and well experienced in business affairs, and Marjorie was 37 years of age and a person with meager assets, a modest income and two children by a former marriage, they became engaged. As an inducement to marriage Clenard assured Marjorie that he would pay the expenses of schooling her children, and in the event of his death, she would be well provided for and his farm lands would become her property. She relied on his inducements in accepting his proposal, and they were married on May 26, 1959.

On May 20, 1959 notwithstanding his inducements to marriage, Oren Dennis entered into a trust agreement with the Illinois State Bank of Quincy. By this agreement which was exhibited with the complaint, Dennis deposited with the bank 106 shares of stock of Dennis Chicken Products Company, 50 shares of stock and 25 $1000 debentures of Davis-Cleaver Produce Company in trust to pay the income to Dennis during his lifetime, and upon his death to pay the proceeds of the Davis-Cleaver items to his daughter, Dorothy Tweedell, and the proceeds from the sale of the Chicken Products stock to his son, David Paul Dennis. The agreement also provided that the settlor by written direction to the trustee could accelerate distribution to the beneficiaries prior to his

death, vote the stock, and revoke the trusts in whole or in part or amend the agreement.

On December 11, 1963 the trust agreement was amended, the provision for revocation was cancelled, and it was then agreed that the trust was irrevocable, and that there was no right to revoke or amend the trust thereafter.

Plaintiff further alleged that the assets transferred to the trust constituted a substantial portion of Dennis' assets at the date plaintiff accepted his proposal of marriage, that he did not inform her of the execution of the trust agreement, that such execution and the deposit of stock and debentures was concealed from her, that she did not consent to the execution of the agreement, and that she had no knowledge of the trust until after Dennis' death on July 15, 1965.

On July 9, 1965 Dennis made a will by which he gave his residence, his household goods and furnishings, and $12,000 to his wife, bequests of $1000 each to two friends, a $500 bequest to another friend, two farms in Schuyler County to his daughter, and all the rest, residue and remainder of his estate to his son. The will named the Illinois State Bank of Quincy as executor. The bank was appointed executor and the will admitted to probate on September 7, 1965. Plaintiff filed her renunciation and election to take against the will on July 1, 1966.

Plaintiff estimated the value of the farm land at $72,500, the dwelling house at $15,000, and deceased's personal property exclusive of assets deposited in the trust at $45,000. It was alleged that the provisions in the trust agreement retaining the life income and reserving the power to vote the stock and to revoke or amend the trust rendered the agreement colorable, illusory and invalid as to plaintiff. She prayed that the court find and declare that the trust agreement was void as to her and that she was entitled to a third of the trust assets, and that the trustee be directed to pay her a third of the trust assets and a third of the income from the trust after Dennis' death.

Named as defendants in the original complaint were: Dennis' daughter, Dorothy Tweedell, his son, David Paul Dennis, and the Illinois State Bank of Quincy as executor of deceased's will and also as trustee of the trust created on May 20, 1959. The daughter, Dorothy Tweedell filed a special appearance, and on May 6, 1969, she was dismissed from the suit and not again made a party. A motion to dismiss plaintiff's amended complaint as modified and an amendment thereto filed by the remaining defendants was allowed on March 6, 1970, and this appeal followed.

In *Padfield v. Padfield* (1875), 78 Ill. 16, cited by appellant, the Court held that the court below did right in sustaining a demurrer and dismissing a bill which alleged that plaintiff's husband, in his lifetime, and

for the purpose of evading the statute, and to deprive her, at his death, of any share in his personal estate, transferred to his son, William, notes worth about $60,000, under an agreement that he was to have one-third at his father's death, and two-thirds was to be delivered for the use of Padfield's other children. The agreement also provided that William pay his father $2000 annually for his support. By his will Padfield bequeathed $5 to each of his children, and the remainder of his property to plaintiff. She renounced all rights under the will.

It was urged that the transaction was void as to plaintiff, that under the statute Padfield had no power to dispose of his personal property so as to deprive his wife of her distributive share, and that the demurrer admitted the allegation that the transfer was made to evade the statute. By way of dicta the Court said that where a husband still retained the right to control the property and resume the same at his pleasure, such a gift was held to be in fraud of the wife's rights because the transfer was only colorable and the title was still in the husband. The Court referred to provisions of the Statute of Wills and the 1861 Married Woman's Law, and concluded that there was nothing in the Wills Act which prevented the husband from disposing of his personal property free from any claim of the wife, whether by sale, gift to his children, or otherwise in his lifetime, and that since the Married Woman's Law conferred upon *femes covert* the power to dispose of their separate property, absolutely and as they may choose, free from the control of their husbands, it was manifestly the intention of the General Assembly to confer on married women the same and no greater rights, in regard to their property, as were possessed by their husbands.

The Court approved as a correct statement of doctrine that "There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be *bona fide,* and no right is reserved to him, though made to defeat the right of the wife, it will be good against her."

In *Smith v. Northern Trust Co.* (1944), 322 Ill.App. 168, also cited by appellant, Smith conveyed all of his estate except his pension to the Northern Trust Company in trust to pay all the income to himself during his life, and upon his death to deliver the trust assets to his son and daughter 40 per cent each, and 20 per cent to his wife. Settlor reserved the right in the event of a change of circumstances to request enough of principal to maintain himself as he was accustomed to live, also the right to veto any change in investment of trust assets, and to revoke,

alter or amend the trust agreement. Smith was married in July 1939, made the trust agreement the next March, and in November 1940 altered it to eliminate his wife and to divide her share between his son and daughter. He died intestate on December 29, 1941, leaving $1400 in cash, an $800 funeral bill, and after payment of costs and fees, nothing for an award or other distribution to his widow.

In holding the transfer to the Northern Trust illusory and invalid as to the widow, the Court referred to the *Padfield* case and quoted from *Martin v. Martin,* 282 Ky. 411, 419, as follows: "It must be conceded that the decided weight of authority is that an absolute bona fide gift of personality by a man contemplating marriage with a woman, or even by a husband during his life, is not a fraud on the marital right of the wife, or intended wife, even though made with the intention and purpose of depriving her of the right of sharing in such property."

The facts in *Smith v. Northern Trust* are distinguishable from those in the instant case. Smith entrusted all of his estate except his pension, retained extensive control over the trust, and at his death left nothing over expenses for his widow. Here, Dennis made the trust irrevocable before his death, and left real and personal property worth $27,000 to his wife, and other assets worth $105,500 exclusive of those in the trust. Since the decision in the Smith case Illinois courts have considered and sustained a variety of trusts or survivorship agreements against various complaints of invalidity.

In *Holmes v. Mims* (1953), 1 Ill.2d 274, 279, where a joint saving account and a joint tenancy in real estate held by a second wife and her deceased husband were sustained against claims by his first wife, the Court said, "Furthermore by the greater weight of authority a spouse in one's lifetime may dispose of his or her property—both personal and real, and thus deprive a husband or wife of a possible inheritance, and such deed, transfer or gift is not vulnerable to attack unless the transaction is a sham and is 'colorable' or · 'illusory' and is tantamount to fraud."

*Farkas v. Williams* (1955), 5 Ill.2d 417, involved four declarations of trust in which Farkas directed that certain shares of Investors Mutual be issued in his name "as trustee for Richard J. Williams". Settlor reserved the right to receive all dividends during his lifetime, to vote the stock, to change the beneficiary, and to revoke the trust. He died intestate leaving as his only heirs at law brothers, sisters, a nephew and a niece. Administrators of his estate complained that the declarations were testamentary dispositions, and not having been executed as a will, were invalid. The Court said that it is well established that the retention by the settlor of the power to revoke, even when coupled with

the reservation of a life interest in the trust property, does not render the trust inoperative for want to execution as a will, and concluded that the declarations constituted valid *inter vivos* trusts and were not testamentary in character.

*Levites v. Levites* (1960), 27 Ill.App.2d 274, shows that Goldie and Samuel Levites were married in 1938. They had children of prior marriages. During November 1950 they made an equal division of certain funds so that each retained $19,000 as his or her sole property. Samuel had no other property. During his last illness he used $17,000 of his funds to purchase U.S. Savings Bonds, Series E, payable to himself and certain of his children, grandchildren and great-grandchildren. He redeemed $1100 of the bonds and used the proceeds for personal purposes. The rest of the bonds remained in his exclusive possession until his death intestate on January 22, 1951. The widow filed a complaint in equity seeking an accounting from the alternative payees of the bonds. Defendants' motion for judgment on the pleading was allowed and her amended complaint was dismissed for want of equity.

On appeal the widow contended that Samuel's purchase of the bonds with intent to exclude her from participation in his estate was a fraud on her marital rights. She conceded that a husband may dispose absolutely of a part or all of his personal property during coverture and that the transfer or gift does not constitute a fraud upon the wife, provided that the transfer be absolute, but if the disposition is not absolute, the transfer is "colorable" or "illusory" and a fraud on the wife's marital rights. The Court held that the purchase of the bonds was not colorable or illusory, and affirmed dismissal of the complaint.

*In re Estate of Petralia* (1965), 48 Ill.App.2d 122, affirmed 32 Ill.2d 134, Petralia transferred funds from his savings account to another account entitled "Tony Petralia, Trustee", in 1948. On the reverse side of the signature card was the following: "All deposits in this account are made for the benefit of Domenica DiMaggio To whom * * * said deposits * * * may be paid in the event of the death of the undersigned trustee." Beneath Petralia's signature as trustee were written "Mrs. Domenica DiMaggio" and "Daughter". Petralia alone made numerous deposits to and infrequent withdrawals from the account. After his death in 1962 it was argued in a citation proceedings that since the settlor retained the power to withdraw interest and principal from the account, the trust was illusory and testamentary in that the beneficiary never obtained any present interest during the settlor's lifetime.

The Supreme Court said that the fact that the beneficiary's enjoyment of the trust was contingent on Petralia's death without having revoked

the trust by withdrawing the account, did not negate the existence of a present interest in the daughter during her father's lifetime, even though that interest may have been highly destructible. The Court held that the card executed by Petralia was sufficient to create a valid *inter vivos* trust, and affirmed judgment that the daughter was entitled to the balance of $17,189.15 in the account.

The *Petralia* case is authority for the validity of savings bank or "Totten" trusts in Illinois. Their legal effect was announced in *Matter of Totten* (1904), 179 N.Y. 112, 71 N.E. 752, and reaffirmed *In re Halpern's Estate* (1951), 303 N.Y. 33, 100 N.E.2d 120. In the *Halpern* case the Court reiterated that "the only sound test of a challenged transfer is whether it is real or illusory * * * whether the husband has in good faith divested himself of ownership of his property or has made an illusory transfer."

Although some of the foregoing cases decided after *Smith v. Northern Trust* may be partially distinguishable from the instant case because they involved persons other than husband and wife, and bank accounts or bonds, and were influenced to some extent by contractual or statutory considerations. Yet they do indicate that Illinois courts have sustained trusts in which settlors reserved rights similar to those provided in Dennis' trust agreement and amendment.

Whether the transfer in this case was real or illusory according to the test defined in the *Halpern* case must be considered in the light of the cases cited above including the *Petralia* decision that bank deposit trusts are valid even though the depositor retains complete control over and the power to destroy the trust account until the moment of his death. In the light of the more recent decisions and the formality involved with preparation and execution of the original agreement as well as the amendment making the trust irrevocable, we are satisfied that Dennis did in good faith divest himself of the property entrusted to the Bank.

Plaintiff contends that her complaint shows that the transfer was attended with circumstances indicative of fraud upon her rights, the circumstances being that after she had acquired knowledge of Dennis' holdings through her employment and he had assured her that after their marriage he would pay the expenses of schooling her children, and if he died she would be well provided for and his farms would become her property, he secretly transferred a substantial portion of his property to the Bank in trust for others. Without some suggestion that Dennis hired plaintiff as a part of the wooing process he ought not be charged with inducement to marriage by means of knowledge of his holdings which she voluntarily acquired through her employment. There is no allegation that Dennis did not school her children, and the facts alleged

indicate that she was fairly well provided for after his death and that the farms were not lost to her as a result of the trust and amendment.

Further, assurances that he would school her children, and if he died he would provide for her well and his farms would be hers, to be fraudulent representations, must relate to a present or past state of facts and not to promises looking to the future (*Bielby v. Bielby,* 333 Ill. 478, 484). Since these alleged assurances all looked to the future, and Dennis clearly had a legal right to dispose of all or part of his personal property without her knowledge or consent, there was no duty to disclose the trust or amendment to her either before or after marriage, and consequently plaintiff's complaint contains no sufficient allegations of specific facts or circumstances indicative of fraud attending the transfer.

█ █ We conclude that the trust agreement made by Dennis on May 29, 1959 and amended by him on December 11, 1963 constituted a valid *inter vivos* trust and should be sustained; that the court below did right in sustaining the motion to dismiss plaintiff's amended complaint, and therefore the circuit court in Hancock County is affirmed.

Judgment affirmed.