## Benge et al. v. Barnett.

February 11, 1949.

John Noland and Murray L. Brown for appellants.

Andrew J. Ross for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

C. R. Barnett died testate while a resident of Richmond, Kentucky, on February 22, 1946. Prior thereto, and on November 2, 1944, he and the appellee, Froney Barnett, were married, which was the second venture for each of them, but no children were ever born as the result of either marriage. Decedent was survived by one brother and two sisters, all of whom were married and lived in separate homes. Neither of them was in anywise dependent upon testator, who was also survived by some nephews, grand-nephews and grand-nieces who with his brother and sisters made a group of eight devisees.

At the time of his death he owned a brick residence located on a lot in Richmond, Kentucky, which he valued in his will in the sum of $10,000, but when later sold by

his executor, Madison-Southern National Bank and Trust Company of Richmond, in the exercise of directions given to it by his will, it brought $16,000. The present value of appellee's interest therein calculated according to the mortality tables was $1,909.23. The will was probated on November 4, 1946, and on April 4, of the same year, appellee renounced it.

Between the date of the marriage of the parties and his death testator gave out of his personal estate to his surviving brother $2,177.88; to his surviving sister, Sarah Ross, $2,400, and to his other surviving sister, Ida Benge, $2,500, making a total of $7,077.88. The testator left intangible property amounting to $4,797.51 and tangible property, which the executor sold for an aggregate amount of $4,671, and he had on deposit in bank the sum of $1,509.18, the grand total of which was $10,-977.96. He owed debts amounting to $109.75, and funeral expenses amounted to $1,026, plus costs of administration, the amount of which does not appear, but with the executor's commission and other costs, it is safe to presume, would amount to between $1,200 and $1,500. Therefore, the debt, funeral expenses and cost of the administration (if the latter were only $1,200) would amount to $2,335.73, leaving the net amount of personal estate for distribution to testator's devisees and to his widow as her statutory share, of $8,641.96. If testator owned the same amount of personal property left by him at his death, at the time he made the gifts to his brother and two sisters, he then owned personal property of the value of $15,719.84, one-half of which the widow would be entitled to under her statutory right in the amount of $7,859.92. He therefore gave to his brother and sisters practically one-half of the personal property he then owned.

On March 26, 1947, the appellee as testator's widow brought this action against the executor of his will, and his surviving brother and sisters, in which she alleged the facts as above recited, and charged that the gifts to the three individual defendants were made to them without her knowledge or consent, for the purpose on the part of her deceased husband, to defraud her of her statutory right to one-half of his personal estate by fraudulently donating to them 45% or more of his per-

sonal estate at the time when the gifts were made, and she prayed that each of the donees be adjudged to return to the estate the amount of their respective gifts, and that she be adjudged one-half hereof as a part of her distributive share in her husband's personal estate. Demurrers, motions and other pleadings were filed following which a stipulation of the facts, duly executed by both sides, was filed. The case was then submitted to the court followed by a judgment against the two sisters and brother of deceased for one-half of the amount of their respective gifts, on the ground that they were made to them with the intention of the donor to deprive her of her distributive share in his personalty. From that judgment they prosecute this appeal.

The final paragraph in the stipulation says:

"It is further stipulated and agreed that the only question presented to the court is the question of whether or not the gifts herein referred to and made to the brother and sisters are in fraud of the marital rights of the plaintiff, Froney Barnett, and that this issue is presented by the pleadings and exhibits filed herein. Or whether the gifts are a material part of the estate of C. P. Barnett."

The record contains no testimony, nor any stipulation, as to the secret intention of the decedent at the time he made the voluntary gifts to his brother and his two sisters which were made after his marriage to appellee. Therefore, in determining whether his intention and purpose at that time was to defraud the appellee of her marital rights in and to his personal estate by reducing the amount of the wife's interest therein, in the event she survived him, the facts in each case must be considered in the determination of that issue.

The contention of appellant's-counsel on this appeal is that in order to raise a presumption of fraudulent intention on the part of a deceased spouse in making gifts, under the circumstances disclosed by this record, it is necessary that the gifts *must* (our emphasis) amount to "the bulk of his estate," and he cites in support of that contention 26 Am.Jur. 817, 818, sec. 198; the case of Murray v. Murray, 90 Ky. 1, 2, 13 S.W. 244, 8 L.R.A. 95;

and other cases, although in the Murray case and the cited text from American Jurisprudence, relied on by counsel to support their contention, the only determinative fact was whether the gifts constituted the bulk of his estate; but we have found no case, nor text, wherein it was held that the *only* fact which would raise a presumption of fraudulent intent on the part of the husband in making such donations would be for him to give away the *bulk* of his estate. On the contrary, in the very section relied on of American Jurisprudence, page 817, it is said:

"In the determination of whether the intention of one spouse, in making a disposition of his or her property to children of a former marriage, is to defraud the other spouse with respect to marital rights of the latter, the condition of the parties and all the surrounding facts and circumstances must be taken into consideration."

Also in the same cited section from that publication, after containing the rule contended for by appellants that the gifts of the *bulk* of his estate would raise a presumption of a fraudulent intent to deprive a surviving widow of her statutory distributable share, it is said:

"The view has been taken, however, that a husband's gift of the bulk of his estate without his wife's knowledge raises a prima facie case of fraud, and unless such presumption is removed by the beneficiaries of the gift, it will be declared void as to the wife. Nevertheless, in order to establish fraud on the part of the husband in giving away property during coverture, the intention to defraud his wife must be proved, the existence of which intention is to be arrived at *by consideration of the facts of a particular case.*" (Our emphasis).

In th case of Martin v. Martin, 282 Ky. 411, 138 S.W. 2d 509, 514, where the question we have here was involved, we said:

"After all, an action of this character is based on a fraudulent act of a husband, or intended husband, seeking to deprive a wife, or intended wife, of a right to share in his property. A husband owes a wife the legal obligation to support and maintain her according to her station in life and the moral obligation to provide as

well as he may for her support and maintenance after his death. * * *

"After a careful consideration of this question we are convinced of the soundness of the rule established in our court by the cases mentioned. We reaffirm the conclusion reached in those cases, namely, that a man may not make a voluntary transfer of either his real or personal estate with the intent to prevent his wife, or intended wife, from sharing in such property at his death and that the wife, on the husband's death, may assert her marital rights in such property in the hands of the donee."

In the case of Anderson v. Anderson, 194 Ky. 763, 240 S.W. 1061, in dealing with the same question we said:

"Even if the rule that a voluntary conveyance by one who had an agreement to marry is not a fraud on the intended wife in case such conveyance is to dependent children and does not exceed a reasonable advancement to them extends to a conveyance to dependent mother and sister, it does not validate a conveyance of *almost half* (our emphasis) of the grantor's real estate to his mother and sister, not dependent on the grantor."

In this case, since the gifts by the deceased to the brother and sisters amounted to about 45% of the personalty he owned at the time of making them without the knowledge or consent of his surviving widow, we must look to other facts and circumstances disclosed by the record in order to determine whether or not they raised a presumption of fraudulent intent on the part of the husband to deprive his wife of her distributable share in his personalty.

The first fact, though perhaps not sufficient to raise a presumption of fraudulent intent, is that the gifts made by him amounted to a little less than 5% of the bulk of his then owned personal estate, but which was at least a substantial portion thereof. The next fact is that in his will in Item IV made shortly after making the gifts in contest he devised to his widow, the appellee, only that portion of his real estate to which she was entitled under the law as his widow, and in Item XII in which he disposed of both the proceeds of his real estate, minus the

present value of his wife's legal interest therein, and his entire personal estate, he directed that:

"All of the residue of my estate having been turned into cash as directed in Item III, I hereby devise and bequeath the same unto the following named kinsmen, share and share alike, being 8 shares, and in the event of the death of either of my kinsmen hereinafter named without heirs of their body, then in that event said deceased kinsmen's share is hereby willed, devised and bequeathed to the survivors of said hereinafter named kinsmen, (naming them)." (Our parenthesis).

There are two ways by which the intent and purpose of one in performing an act may be established, (1) express testimony as to the fact of intent; and (2) by the acts and deeds of the one whose intent is the subject of inquiry. Under the latter method we have but little trouble in determining the intention of the testator in this case to defraud his wife of her distributable share of one-half of his personal estate. As we have seen, he gave to his brother and sisters 45% of the personalty he owned at the time of the gifts, and in his will, executed about one month before his death, he sought to deprive her entirely of any interest whatever in and to the personalty he owned at his death. Such facts clearly demonstrate that he did not intend for his widow to receive any part of the personalty he owned at the time of his death, which facts are tantamount to express testimony of such intent, as if he had expressly said in clear and unambiguous terms that "I do not want my wife to receive any portion of the personal property that I own at my death." No contrary conclusion can be reached in view of the facts disclosed by the record without testimony heard. The court therefore, did not err in adjudging plaintiff, and appellee, was entitled to receive from each of the donees of the deceased one-half of the amount of the gifts made to them.

Wherefore, the judgments are affirmed.