RENDERED:  NOVEMBER 5, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0682-MR
&
NO. 2020-CA-0700-MR

KENNETH BRANDON KEITH
AND MATTHEW SCOTT KEITH,
INDIVIDUALLY AND AS
CO-EXECUTORS OF THE ESTATE
OF JAMES KENNETH KEITH                    APPELLANTS/CROSS-APPELLEES


APPEAL AND CROSS-APPEAL FROM WARREN CIRCUIT COURT
v.                HONORABLE JOHN R. GRISE, JUDGE
ACTION NO. 17-CI-00268


DEBRA CROSS, EXECUTOR OF
THE ESTATE OF JUDITH KEITH            APPELLEE/CROSS-APPELLANT


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; GOODWINE AND MAZE, JUDGES.

CLAYTON, CHIEF JUDGE:  Kenneth Brandon Keith ("Brandon") and Matthew

Scott Keith ("Matt"), individually and as co-executors of the estate of their late

father James Kenneth Keith ("Kenneth"), appeal from orders of the Warren Circuit Court which held that Kenneth had committed fraud on the dower in the disposition of his personal property. The action against Brandon and Matt was brought by their stepmother, Judith Magers Keith, now represented by her daughter, Debra Cross, the executor of her estate, who has brought a cross-appeal. The two primary issues are whether Judith succeeded in proving a *prima facie* case of fraud on the dower and, if so, whether the trial court correctly determined which assets are subject to the claim.

## Background

Kenneth and Judith were married on January 1, 1997. They did not execute a prenuptial agreement. Both had been married before and had adult children from their previous marriages. Eight months after the marriage, Kenneth retired. He died testate on February 7, 2017, after suffering from cancer for three years.

Judith was not a beneficiary under the terms of Kenneth's will. The assets she received all passed to her by right of survivorship. They consisted of a Vanguard account containing $86,173.52; the marital residence, subject to mortgage debt in the amount of approximately $166,415; her Honda CR-V vehicle which was subject to an automobile loan debt in Kenneth's name; and one half of a health savings account in the amount of $7,182.16. She also received benefits

-2-

from two pensions totaling approximately $126 per month, and $2,000 of a $6,000 death benefit from a life insurance policy.

Judith later discovered that Kenneth had named his two adult sons, Brandon and Matt, as the sole beneficiaries of three substantial retirement and investment accounts he owned at Edward Jones, and that Matt also held the right of survivorship to two joint checking accounts with Kenneth at PNC Bank. These five accounts contained funds totaling over $500,000. Both sons were also named as beneficiaries of Kenneth's life insurance policy, which paid a death benefit of $125,000. Additionally, Kenneth's will contained a provision forgiving a loan Kenneth had made to Brandon and Matt to purchase the former family home on Peachtree Lane in Bowling Green. At the time of Kenneth's death, the amount of the loan still remaining was approximately $120,000.

On March 6, 2017, Judith filed a complaint against Brandon and Matt in Warren Circuit Court, asserting fraud upon her dower interest in the assets held by Kenneth at the time of his death. On March 22, 2017, following a hearing, the trial court entered a temporary restraining order to prevent the distribution or disbursement of the funds held in the decedent's accounts at Edward Jones and PNC Bank. On May 31, 2017, Judith renounced Kenneth's will, as provided under Kentucky Revised Statutes ("KRS") 392.020.

At an evidentiary hearing held on May 31, 2017, Judith testified that she was unaware of Kenneth's financial arrangements with his sons and was "devastated" when she learned of them after his death. She related an incident which occurred in 2016, when Matt picked up Kenneth from their marital residence on Willow Oak Drive. After they were gone for several hours, Judith called Kenneth's cell phone to check on him. She testified that the phone rang and the line opened. She heard a conversation among Kenneth, Matt, and a third man. Judith surmised that Kenneth had accidentally answered his phone when it rang but did not realize she could overhear their conversation. Judith testified she heard Matt say, "I don't want my stepmom to get upset when I check all the money out." Judith thought Matt was referring to a PNC bank account Kenneth had opened with Matt on May 29, 2012 in the name "James Kenneth Keith, d/b/a The Keiths." When she asked Kenneth about it, he told her it was a business account and they "might buy something."

Judith also testified that she did not know about the loan forgiveness provision on the Peachtree Lane home purchased by Matt and Brandon, although this testimony was disputed by Matt and Brandon who claimed that Judith was present at the closing on the property and signed the promissory note containing the loan forgiveness provision. Matt and Brandon also argued that Judith had

-4-

knowledge of the value of Kenneth's finances as evidenced by her testimony that during the marriage she prepared their joint income tax returns.

Judith passed away on September 11, 2018, and her daughter, Debra Cross, the executor of her estate, was substituted as the plaintiff.

Both sides filed motions seeking summary judgment. On March 19, 2019, the trial court entered an order ruling that the plaintiff had succeeded in proving an unrebutted *prima facie* claim of fraud on the dower as a matter of law and ordered a bench trial to determine which assets should be included in the dower share calculation. The bench trial was held on March 28, 2019. The trial court entered its final order and judgment on April 28, 2020. It subsequently entered an order granting in part and denying in part a motion by Cross to alter, amend, or vacate the judgment. This appeal by Matt and Brandon followed. Cross has filed a cross-appeal. Further facts will be set forth below as necessary.

**Standards of Review**

Our review of the trial court's grant of partial summary judgment to Judith focuses on "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); Kentucky Rules of Civil Procedure ("CR") 56.03. The trial court must view the record "in a light most favorable to the party opposing the motion for summary

judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). On the other hand, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id*. at 482. "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).

In reviewing the trial court's final order and judgment following the bench trial, the trial court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. A factual finding is not clearly erroneous if it is supported by substantial evidence, which is defined as evidence which "has sufficient probative value to induce conviction in the mind of a reasonable person." *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005). The trial court's conclusions of law, however, are reviewed *de novo*. *Id.* at 898-99.

**Fraud on the Dower**

When an individual dies intestate, Kentucky law provides that his or her surviving spouse is entitled to recover the following:

> [A]n estate in fee of one-half (1/2) of the surplus real
> estate of which the other spouse or anyone for the use of

-6-

the other spouse, was seized of an estate in fee simple at the time of death, and . . . an estate for his or her life in one-third (1/3) of any real estate of which the other spouse or anyone for the use of the other spouse, was seized of an estate in fee simple during the coverture but not at the time of death, . . . [and] also . . . **an absolute estate in one-half (1/2) of the surplus personalty left by the decedent**.

KRS 392.020 (emphasis added). Surplus personalty means "the personalty remaining after the payment of the debts, funeral expenses, charges of administration, and widows exemptions have been deducted from the gross personalty possessed by the decedent at the time of his death." *Harris v. Rock*, 799 S.W.2d 10, 11 (Ky. 1990).

When an individual dies testate, "the surviving spouse may . . . release what is given to him or her by will, if any, and receive his or her share under KRS 392.020 as if no will had been made[.]" KRS 392.080(1)(a). The surviving spouse's share is called dower (for widows) and curtesy (for widowers). *Bays v. Kiphart*, 486 S.W.3d 283, 287 (Ky. 2016).

Fraud on the dower or curtesy occurs when a spouse attempts to prevent the surviving spouse from receiving his or her statutory share in the future by diverting assets through *inter vivos* transfers of assets to third parties, by purchasing real estate in the name of another person, or placing cash into joint accounts with third parties. *Id*. Such attempts "may be unwound, at least to the extent needed to fund the surviving spouse's share." *Id*. The traditional rule is

summarized thusly: "a man may not make a voluntary transfer of either his real or personal estate with the intent to prevent his wife, or intended wife, from sharing in such property at his death and that the wife, on the husband's death, may assert her marital rights in such property in the hands of the donee." *Id.* (citation omitted). "[T]he same rule applies to a woman who attempts to defeat her husband's spousal rights[.]" *Id.* When a *prima facie* case of fraud on the dower is presented, "unless such presumption is removed by the beneficiaries of the gift, it [the gift] will be declared void as to the wife." *Benge v. Barnett*, 309 Ky. 354, 217 S.W.2d 782, 783 (1949).

### The Assets at Issue

The trial court determined that Judith had presented a *prima facie* case of fraud on the dower, specifically in relation Kenneth's disposition of the following assets: three Edward Jones accounts, two PNC accounts, and the mortgage debt forgiveness on the Peachtree Lane residence.

The largest of the Edward Jones accounts was a traditional individual retirement account ("IRA") which contained $368,742.39 at the time of Kenneth's death. His financial adviser testified that the account was created in December 2007 when Kenneth rolled over funds from another account, probably a 401k account from an employer. Kenneth designated Matt and Brandon as the sole beneficiaries of this account. In the same month, Kenneth opened an investment

account at Edward Jones which contained $122,613.53 at the time of his death. Although initially no beneficiaries were named on that account, Kenneth designated Matt and Brandon as the beneficiaries on November 14, 2014, approximately two years before his death. The smallest Edward Jones account was a Roth IRA containing $2,829.45. This account was opened in May 1999. Kenneth changed the beneficiary of this account from Judith to Matt and Brandon on April 22, 2008.

Kenneth owned two accounts at PNC Bank, containing $6,895.38 and $7,647.79 at the time of his death. Matt was added as a joint owner of both accounts in 2012, five years before Kenneth's death.

At the time of his marriage to Judith, Kenneth was the sole owner of a house and lot on Peachtree Lane, the childhood home of Brandon and Matt. On May 4, 2012, with Judith's knowledge, Kenneth sold the property to Brandon and Matt for $130,000 and financed the purchase price. Judith signed the deed as Kenneth's spouse, although her name did not appear on the original deed. The promissory note provided for the forgiveness of the loan upon Kenneth's death, stating: "In the event that the holder/Payee should become deceased before the time in which entire principal balance plus accrued interest is paid in full, the Debtor/Payor is hereby released from any and all obligations as set forth in this promissory note, and therefore any remaining balance due and owing shall be

forgiven and considered to be paid in full." As we previously noted, Judith testified that she was unaware of this provision.

According to Brandon's testimony, the balance of the note on the date of his father's death was $116,608.09. Cross contended that the payment records showed a balance of $120,997.75. The trial court accepted this latter figure as the forgiven balance.

Kenneth owned a Jackson National Life Insurance policy with a cash value of over $13,000 prior to his death and a death benefit of over $125,000. Matt and Brandon were the designated beneficiaries.

The marital home, on Willow Oak Drive in Bowling Green, was held by Kenneth in survivorship with Judith. Also, via survivorship, Judith received her 2014 Honda CR-V vehicle, subject to a loan. Judith received monthly pension benefits of $35.44 from Weyerhaeuser Co. and $91.18 from International Paper. She received one half of Kenneth's Health Savings Account from International Paper in the amount of $7,182.16, and $2,000 of a $6,000 death benefit from an Aetna life insurance policy. She was the sole beneficiary of a Vanguard account containing $86,350.72.

The trial court concluded, based on these facts, that Judith had presented a *prima facie* case of fraud on the dower, and that a jury trial was unnecessary, because Kenneth's actions conclusively established his intent that

Judith not receive the one half of the surplus property to which she was entitled by statute.

The trial court then proceeded to characterize the assets as follows:

As to the life insurance policy with Jackson National, which provides a death benefit of over $125,000, the trial court relied on *Bays v. Kiphart*, *supra*, for the "straightforward rule" that proceeds from a life insurance policy payable to a third-party beneficiary are not part of the decedent's property because they are not possessed by him during his lifetime. This ruling has not been challenged in the appeal or cross-appeal.

As to the Edward Jones accounts, the trial court ruled they were subject to the claim of fraud on the dower because Kenneth intended to deprive Judith of these funds when he designated his sons as the sole beneficiaries.

The forgiveness of the debt on the Peachtree Lane residence was also treated by the trial court as subject to the fraud on the dower claim.

As to the marital home on Willow Oak Drive and the jointly-titled Honda CR-V, the trial court ruled that they passed directly to Judith outside Kenneth's estate via the right of survivorship.

The trial court created the following formula for calculating Judith's dower share: It added together the three Edward Jones accounts, the two PNC accounts, the Vanguard annuity paid to Judith, the health savings account paid to

Judith, and the promissory note amount on the Peachtree residence of $120,997.75 plus interest. These together constituted the gross estate. The following items were then subtracted: the statutory exemption of $15,000,[1] an executor's fee of one percent, attorneys' fees of $7,000, and funeral expenses of $10,318. The resulting total was the surplus property. This amount was divided in half to arrive at Judith's dower share. The Vanguard annuity and health savings account were then subtracted from this amount and the statutory exemption of $15,000 was added back in.

## Analysis

Matt and Brandon argue that a fraud on the dower claim cannot be established through a "simple mathematical calculation" based on who receives certain non-probate assets, but instead requires proof that the surviving spouse would actually be rendered destitute by the decedent's actions. Their argument is founded on language found in *Hannah v. Hannah*, which states: "The purpose of the dower statute is to insure that a surviving spouse will not be left disinherited and destitute. The statute is to apply in only those limited situations. It was not meant to utterly destroy the testator's ability to give and devise his property as he desires so long as the spouse was provided for." 824 S.W.2d 866, 868 (Ky. 1992). KRS 392.020 does not destroy the testator's ability to dispose of his property. It

---

[1] The so-called "widow's exemption" under KRS 391.030(1)(c), which was amended in 2020 to raise the amount to $30,000.

-12-

establishes that the standard for insuring a surviving spouse is not left destitute is as "an absolute one-half interest in the surplus personalty of a deceased spouse." *Harris*, 799 S.W.2d at 11. The statute does not require an additional showing that the decedent intended to leave the surviving spouse destitute or that the surviving spouse would actually be rendered destitute by the decedent's actions.

The trial court inferred Kenneth's intent to deprive Judith of her dower share from his actions, a method which is fully in accordance with our precedent as set forth in *Benge v. Barnett*, 309 Ky. 354, 356, 217 S.W.2d 782 (1949). In that case, the decedent spouse gave his siblings approximately one half of his personal property in the form of gifts. His widow alleged he sought to defraud her of her statutory right to one half of his personal estate. The record in *Benge*, as in this case, contained "no express testimony, nor any stipulation, as to the secret intention of the decedent at the time he made the voluntary gifts" to his siblings after his marriage. *Id*. at 783. Our state's highest court at the time held that in the absence of express testimony, intent could be established "by the acts and deeds of the one whose intent is the subject of inquiry." *Id*. at 784. It concluded:

> Under the latter method we have but little trouble in determining the intention of the testator in this case to defraud his wife of her distributable share of one-half of his personal estate. As we have seen, he gave to his brother and sisters 45% of the personalty he owned at the time of the gifts, and in his will, executed about one

month before his death, he sought to deprive her entirely of any interest whatever in and to the personalty he owned at his death. Such facts clearly demonstrate that he did not intend for his widow to receive any part of the personalty he owned at the time of his death, which facts are tantamount to express testimony of such intent, as if he had expressly said in clear and unambiguous terms that 'I do not want my wife to receive any portion of the personal property that I own at my death.' No contrary conclusion can be reached in view of the facts disclosed by the record without testimony heard.

*Id.*

A decedent will be deemed to have intended the natural consequences of his actions. *Anderson v. Anderson*, 583 S.W.2d 504, 505 (Ky. App. 1979). It is undisputed that Kenneth intended his sons to receive the bulk of his surplus personalty, with the natural consequence that Judith was deprived of her dower share.

The appellants attempt to distinguish the facts of this case from earlier precedent by pointing out that Kenneth's actions in the disposition of his property were taken no earlier than two years prior to his death and in most instances seven to nine years before, and that there was no proof of specific acts of fraud, such as converting an asset on the eve of his death. They further argue that there was no evidence they, Brandon and Matt, took any action to defraud Judith. But the actions Kenneth took in 2007 and 2014 did evince his intent to make Brandon and Matt the beneficiaries of the bulk of his personalty. The fact that he led an

-14-

independent life and managed his own affairs up until the week prior to his death only confirms that his intent in this regard did not change as he had the capacity until very shortly before his death to change the disposition of his property.

The appellants further contend that when Kenneth devised his estate plan several years prior to his death, he intended for assets he earned before his marriage to Judith to go to his sons from the prior marriage and for assets he earned during the marriage to go to Judith. They characterize this as a normal estate plan rather than fraud on the dower. But for purposes of fraud on the dower, unlike the division of assets in a marital dissolution action, a distinction is not drawn between assets acquired by the decedent prior to his marriage or assets acquired shortly before death.

Matt and Brandon also raise an equitable argument. As a result of the trial court's decision, Judith's children will receive over 75 percent of the assets Kenneth owned immediately before his death, whereas they, his direct blood relatives, will receive less than 25 percent. They contend that this result is contrary to the intent behind the creation of fraud on the dower and that they were entitled to a judgment as a matter of law dismissing Judith's claim. The statute does not contain any provision preventing the award of the dower share if its effect is inequitable to other parties. Similarly, the common law doctrine is silent as to the impact on the decedent's children or any other beneficiaries.

Next, the appellants contend that they were entitled to a jury trial on the issue of whether fraud on the dower occurred. They concede that the cases addressing fraud on the dower provide little guidance in this regard and most of them appear to have been decided by bench trial.

"[I]n civil cases, Kentucky law recognizes exceptions to the right to a jury, including causes of action at common law that would have been regarded as arising in equity rather than law. If the nature of the issues presented is essentially equitable, no jury trial is available. If the issues are predominantly legal in scope, however, a right to a jury trial exists." *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 210 (Ky. App. 2009) (citations omitted).

Matt and Brandon contend that the question of which assets are subject to a fraud on the dower claim is one of equity to be determined by the court prior to trial. Once these assets are identified, however, they argue that the determination of Kenneth's intent in the disposition of these assets should be decided by a jury.

The trial court ruled that a jury was not required to decide Kenneth's intent because his actions in giving his sons a substantial portion of his surplus personalty conclusively established it. It stated "[t]he jury does not need to decide whether he intended to provide for Judith or whether she was left destitute because the legislature has clearly established what division of property (dower rights) will

-16-

avoid destitution (not to mention avoid jury trials every time a dower right is claimed)." We agree with the trial court's analysis in this regard. Because the court had already determined which assets would be subject to a fraud on the dower claim, a determination which the appellants agree is a matter for the judge and not a jury, and because the plaintiff made a *prima facie* case of fraud on the dower based on Kenneth's disposal of these assets, a jury trial was not required.

Next, the appellants challenge the trial court's ruling that the financial accounts with a beneficiary election are subject to a fraud on the dower claim. They contend that the Kentucky Supreme Court ruling in *Kiphart*, *supra*, that life insurance policies are not subject to a fraud on the dower claim, should be extended to apply to longstanding IRAs and financial accounts which fall outside Kentucky probate law and are considered a non-testamentary/non-probate asset. As provided under KRS 391.315(1)(a), "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties to the account as against the estate of the decedent unless there is clear and convincing written evidence of a different intention at the time the account is created." Matt and Brandon contend that in order to claim fraud on the dower, the claimant must establish that the asset transferred was originally subject to the dower laws, and but for the deceased's transfer, the asset would have remained subject to the dower law.

This question is resolved by *Harris v. Rock*, *supra*, in which a husband deposited $20,000 into joint accounts with each of his seven children and $20,000 into a joint account with his wife. When, after his death, she filed an action to recover her dower interest in one half of her late husband's personalty, the children argued that the funds in the joint accounts belonged to them in survivorship pursuant to KRS 391.315(1). The Court agreed that under KRS 391.315 funds in a joint account belonged to the survivor as against the estate of the decedent but cautioned that this was

> subject to a statutory limitation that the funds do not become the property of the survivor if there is clear and convincing evidence of a different intention at the time the account was created. We think there is another limitation, necessarily implied in law, that the survivor of parties to a joint account cannot become the owner of the funds in the account upon the death of the other party if the party who deposited the funds was not legally entitled to dispose of them in such a manner.
>
> . . . While K.R.S. 391.315 is a perfectly appropriate statute to settle a dispute between the estate of a decedent and the surviving party to the joint account when there is no clear and convincing evidence of the intent of the parties at the time the account was opened, it is not an appropriate statute to accomplish a transfer of ownership of funds as to which the depositor into the account had no right of disposition. Most certainly, a deposit into a joint account cannot defeat the right to recover the funds so deposited by one who has a legal claim of ownership thereof.
>
> It would go without argument that stolen funds cannot legitimately be transferred to the survivor of a

joint account by virtue of the fact that the thief had deposited those funds into a joint account. That would be true because the depositor simply had no legal right to dispose of the money so deposited.

Likewise, it has long been the law of Kentucky by virtue of K.R.S. 392.020 that a husband has no legal right to dispose of more than one-half of his property with intent to defeat a dower claim by his widow. It follows that a husband cannot be permitted to circumvent the law and intentionally defeat a dower claim by means of a deposit into a joint account with someone other than his wife. We interpret K.R.S. 391.315(1) to mean that upon the death of a party to a joint account, the funds on deposit therein do not belong to the survivor if:

(1) there is clear and convincing evidence of a different intention at the time the account was created, or (2) if the depositor was not legally entitled to make such a disposition of the funds.

Absent an agreement of the parties, a disposition of property with the intent to defeat the right of dower creates a presumption of fraud upon the surviving spouse. The deposit of approximately seven-eighths (⅞) of the personal estate of the decedent in this case into a joint account with his children leaves no doubt of his intent to defeat the movant's dower interest, and as such, raised a presumption of fraud which was not rebutted.

*Harris*, 799 S.W.2d at 12.

Relying on *Harris*, the trial court correctly determined that Kenneth was not legally entitled to designate his sons as the beneficiaries of the funds in the Edward Jones and PNC accounts because the funds in those accounts constituted the bulk of his personalty. When he did so, he "necessarily and purposefully"

-19-

excluded Judith.  By contrast, the proceeds of the Jackson National Life insurance policy were not subject to the fraud on the dower claim because the $125,000 death benefit payable to Matt and Brandon was not part of Kenneth's personalty during his lifetime.

Employing the same rationale, the appellants argue that the forgiveness of the promissory note on the Peachtree Lane property should not have been subject to the fraud on the dower claim, because it was a non-testamentary asset that could never have been part of Kenneth's surplus personalty for purposes of a claim of fraud on the dower.  Additionally, they argue that Judith explicitly waived her dower claim to the funds by signing the deed to the Peachtree Lane property to Brandon and Matt.  They contend that she had the right to withhold her signature to the deed if she felt she was being defrauded by her husband via his inclusion of the forgiveness language in the promissory note.

KRS 391.360(1)(b) provides that "[a] written provision for a nonprobate transfer on death . . . is nontestamentary.  These written provisions shall include . . . written provisions which provide that . . . [m]oney due or to become due under the instrument shall cease to be payable in the event of the death of the promisee or the promissor before payment or demand[.]"

The evidence regarding whether Judith was present at the real estate closing on the Peachtree Lane residence was contested.  Matt testified that she was

present in the room for the entire closing. Judith testified and produced documentary evidence that she did execute the deed but was not present on the date the mortgage and promissory note containing the loan forgiveness provision were executed. She testified that she was unaware of the forgiveness language and believed that the mortgage payments would be used to pay for her health insurance. The trial court found that Matt and Brandon had failed to produce evidence that Judith was a joint promisor and that she had not forfeited or relinquished her interest in the promissory note. These findings of fact are substantially supported by the record and cannot be overturned on appeal.

We agree with the trial court that the forgiveness provision was analogous to naming his sons as the beneficiaries of the Edward Jones and PNC accounts, in that it impinged on Judith's dower interest. Consequently, the trial court's inclusion of the promissory note amount in the dower share was not erroneous.

Matt and Brandon also argue that the joint PNC checking accounts should not be subject to the fraud on the dower claim. Kenneth added Matt as the joint owner of these two accounts in 2012, five years before his death. The approximate value of the accounts at the time of Kenneth's death was $14,500. Matt and Brandon argue that Judith was obligated, and failed, to proffer some evidence that Kenneth took this action in order to deprive her of her dower interest.

Because she received other assets of Kenneth's of significant value, they contend that such a showing would not be possible. But Kenneth made Matt a joint owner of these PNC accounts five years after he had already named Matt and Brandon the beneficiaries of his Edward Jones accounts, which contained the most substantial assets. When viewed in this context, his decision to make Matt the sole beneficiary of the PNC accounts further evinces his intent that Judith not receive these funds.

The appellants also argue that the assets received by a surviving spouse should be considered in determining whether fraud on the dower occurred and in calculating the dower share. They contend that if the Edward Jones and PNC accounts are to be included in the "damage calculation," there should also be a credit for the value of the survivorship assets received by Judith, in the form of the equity in the Willow Oaks house and the Honda vehicle, which were held by Kenneth and Judith in joint survivorship.

The Edward Jones and PNC accounts contained the bulk of Kenneth's personal property. Upon his death, the funds in these accounts would have passed directly to his designated beneficiaries, Matt and Brandon, outside his estate. The trial court determined, however, that in designating his sons as the beneficiaries of these accounts, he intended to direct these funds away from Judith, thereby depriving her of her statutory dower share. Consequently, these assets were

subject to the fraud on the dower claim. On the other hand, because the house and the car were held in joint survivorship by Judith and Kenneth, there was no evidence of intent on Kenneth's part to deprive Judith of her dower share in these assets. Consequently, they remain outside the estate and pass directly to Judith, along with the debts associated with those assets.

This analysis also resolves the cross-appellant's argument that the mortgage debt on the marital residence of approximately $166,000 and the vehicle loan should be debts of Kenneth's estate and should be paid in full by the estate. The marital residence and vehicle were not part of Kenneth's property subject to the dower share, and neither were any debts associated with the property.

> Renunciation of a will does not create intestacy. The provisions of the will are enforceable, insofar as possible, as to all beneficiaries except the surviving spouse. By a special statutory provision, the surviving spouse may take what is given by the will or a statutory share. As to other beneficiaries, the will remains in effect and is enforced as nearly as possible in accordance with the intention of the testator.

*Brown v. Sammons*, 743 S.W.2d 23, 26 (Ky. 1988).

The estate and its beneficiaries should not bear the debts associated with assets that passed outside the will through survivorship.

Finally, the appellants contend that withdrawals which were made from the Edward Jones accounts during Kenneth's lifetime into a joint account with Judith should be credited against any damage award. After the Edward Jones

IRA account was created in 2007, $1,200 was withdrawn from it every month and placed in a joint checking account held by Kenneth and Judith. Matt and Brandon have calculated that a total of $130,800 was thereby withdrawn from that account during Kenneth's lifetime and inured to Judith's benefit. They contend that this sum should be added back into calculating her dower share, arguing she should not be allowed to receive a "windfall" in the amount of more than fifty percent of the entire account over its lifetime. But the statute specifies that a surviving spouse is entitled to recover an absolute estate in one half of the surplus personalty left by the decedent. KRS 392.020. If Kenneth had left the funds in the IRA to his sons in his will, and Judith had renounced the will, she would have been entitled to recover one half the value of the account at the time of Kenneth's death. It would be inequitable and illogical to hold that because there was fraud on the dower she was entitled to recover less.

The cross-appellant argues that the trial court erred in not awarding interest on the dower share. She contends that the dower share is a liquidated sum for which prejudgment interest at the legal rate should have been awarded pursuant to KRS 360.040(1), which provides that "a judgment, including a judgment for prejudgment interest, shall bear six percent (6%) interest compounded annually from the date the judgment is entered. A judgment may be for the principal and accrued interest."

"The longstanding rule in this state is that prejudgment interest is awarded as a matter of right on a liquidated demand, and is a matter within the discretion of the trial court or jury on unliquidated demands." *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005) (citing *Nucor Corp. v. General Elec. Co.*, 812 S.W.2d 136, 141 (Ky.1991)). Liquidated claims are "of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values." *3D Enterprises*, 174 S.W.3d at 450 (citing 22 AM. JUR. 2D *Damages* § 469 (2004)).

We agree with Matt and Brandon that the damages in this case were unliquidated. "It must be remembered that, in determining if a claim is liquidated or unliquidated, one must look at the nature of the underlying *claim*, not the final award." *Id*. Determining whether fraud on the dower had occurred and which assets or portions of assets were subject to the claim were hotly contested issues throughout this litigation. We review the trial court's decision for an abuse of its discretion, that is, whether the decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Hazel Enterprises, LLC v. Ray*, 510

S.W.3d 840, 843 (Ky. App. 2017). Considering the nature of the litigation, it was well within the trial court's discretion not to award prejudgment interest.

As to post-judgment interest, KRS 360.040(4) provides: "When a claim for unliquidated damages is reduced to judgment, such judgment may bear less interest than six percent (6%) if the court rendering such judgment, after a hearing on that question, is satisfied that the rate of interest should be less than six percent (6%)." There is no "absolute right" to post-judgment interest under KRS 360.040. *Hazel Enterprises*, 510 S.W.3d at 844. "[T]he trial court may find that the statutory interest rate is not appropriate given the equities of the particular case and may deny post-judgment interest altogether." *Id*. (citations omitted). Matt and Brandon emphasize that the Edward Jones accounts have increased significantly in value during the course of the litigation. They presumably have continued to do so following the entry of the final judgment. We see no abuse of discretion in the trial court's decision not to award post-judgment interest.

Cross further argues that Brandon and Matt should not have been awarded an executor's fee, claiming they were fully aware of their father's efforts to divert his entire estate to them and to avoid probate. Cross contends they were not entitled to a fee because Judith did all the work to determine she was entitled to her statutory exemption as the surviving spouse. KRS 395.150(1) specifies the following formula for calculating an executor's fee: "The compensation of an

-26-

executor, administrator or curator, for services as such, shall not exceed five percent (5%) of the value of the personal estate of the decedent, plus five percent (5%) of the income collected by the executor, administrator or curator for the estate." The trial court stated that it found the five percent fee excessive, based on the amount of work actually performed by the defendants in the probate of Kenneth's estate. It recognized Cross's concerns when it set the fee at one percent, which it deemed appropriate because Matt and Brandon's actions mostly involved pursuing their individual interests and only partly as executors. The amount of the award reflected the realities of this litigation and was well within the trial court's discretion.

Cross also disputes the award of $7,000 in attorneys' fees in the probate case, arguing that the award was unreasonable because probate counsel did little work and provided little counsel to their clients. Again, this determination was within the discretion of the trial court. The trial court found Matt and Brandon's claim of attorneys' fees related to the probate of Kenneth's estate in district court to be reasonable but refused to award the requested fees of $31,000 in the circuit court case, explaining "[t]he fees incurred in this Court arose from the defendants' unsuccessful pursuit of their own interest in defeating Judith's dower claim, and they, and she, should pay their own attorney's fees." The trial court's

decision is not unfair nor does it contravene any legal principles. Consequently, it will not be disturbed on appeal.

## Conclusion

For the foregoing reasons, the orders and final judgment of the Warren Circuit Court are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS/
CROSS-APPELLEES:

Brian K. Pack
Glasgow, Kentucky

BRIEFS FOR APPELLEE/
CROSS-APPELLANT:

Lanna Martin Kilgore
Bowling Green, Kentucky